IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM BATISTE, ET AL., ) | CIVIL NO. 15-00397 ACK-KSC |
| ) | |
| Plaintiffs, ) | |
| ) | FINDINGS AND RECOMMENDATION |
| vs. ) | TO GRANT DEFENDANT'S MOTION |
| ) | TO REFER CASE TO UNITED |
| SUN KONA FINANCE I, LLC, ) | STATES BANKRUPTCY COURT |
| ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

<u>FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION TO REFER CASE TO UNITED STATES BANKRUPTCY COURT</u>

Before the Court is Defendant Sun Kona Finance I, LLC's ("Defendant") Motion to Refer Case to United States Bankruptcy Court, filed October 5, 2015. Plaintiffs filed an Opposition on October 30, 2015. Defendant filed a Reply on November 6, 2015.

This matter came on for hearing on January 12, 2016.  A. Bernard Bays, Esq., Christian Chambers, Esq., and Grant Fasi-Allison, Esq., appeared on behalf of Plaintiffs.  James Wagner, Esq., and Neil Verbrugge, Esq., appeared on behalf of Defendant.  After careful consideration of the parties' submissions, the applicable law, and the arguments of counsel, the Court

HEREBY RECOMMENDS that Defendant's Motion be GRANTED for the reasons set forth below.

## BACKGROUND

The parties were previously creditors in the Chapter 11 bankruptcy case, <u>In re 1250 Oceanside Partners</u>, Case No. 13-00353.

On November 22, 2013, the debtors and Defendant filed a Third Amended Joint Consolidated Plan of Reorganization ("Consolidated Plan"). The Consolidated Plan provides, in pertinent part:

> 11.1 Retention of Jurisdiction
>
> Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and any of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan is carried out, provided, however, that the Bankruptcy Court shall not have jurisdiction with respect to Tax Claims that arise solely after the Effective Date. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following

        purposes:

        . . . .

        (g) resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, or the Confirmation Order, including the release and injunction provisions set forth in and contemplated by the Plan and the Confirmation Order or any Person's rights arising under or obligations incurred in connection with the Plan, or the Confirmation Order;

        . . . .

        (o) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Chapter 11 Case, or the Plan;

        . . . .

        (q) determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

        (r) determine any other matter not inconsistent with the Bankruptcy Code.

Mot., Ex. B. at 66-70.

On May 12, 2014, the bankruptcy parties entered into a settlement, memorialized in the Binding Settlement Term Sheet ("Term Sheet"). Opp'n, Ex. B.

On June 2, 2014, the bankruptcy court entered an Order Confirming the Consolidated Plan ("Confirmation Order"). Mot., Ex. E. The Confirmation Order approved the Term Sheet and incorporated it into the Confirmation Plan. Id., Ex. E at ¶ 26. The Confirmation Order also confirmed the Consolidated Plan and incorporated it into the Order. Id., Ex. E at ¶ 1.

On June 22, 2015, the bankruptcy court issued a Final Decree, which 1) discharged the debtors, their representatives, and their appointed professionals from further responsibilities and/or duties; 2) approved the debtor's Chapter 11 post-confirmation final reports; and 3) directed that all orders and judgments of the court would continue in effect and operation; and 4) closed the case. Opp'n, Ex. A.

This action arises out of a dispute over the Term Sheet. Plaintiffs allege that Defendant breached the Term Sheet by opposing Plaintiffs' $250,000.00

request for attorneys' fees, and that Defendant made false representations concerning its intention not to oppose the fee request in order to induce Plaintiffs to dismiss the adversary proceedings filed in bankruptcy court.  Doc. No. 1, Ex. A at ¶¶ 49-59.

## DISCUSSION

Defendant moves to refer all pretrial matters to the bankruptcy court because this case has a close nexus to In re 1250 Oceanside Partners.

A.  Statutory Jurisdiction

"A bankruptcy court has jurisdiction over 'all civil proceedings arising under title 11, or arising in or related to cases under title 11.'"  In re Pegasus Gold Corp., 394 F.3d 1189, 1193 (9th Cir. 2005) (quoting 28 U.S.C. § 1334(b)).[1]  "Proceedings 'arising

---

[1]  Local Rule 1070.1(a) provides:

> Pursuant to 28 U.S.C. § 157(a), all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this district, except as provided in LR1070.1(b).  A party may request that reference of a particular matter be

in' bankruptcy cases are generally referred to as 'core' proceedings, and essentially are proceedings that would not exist outside of bankruptcy, such as 'matters concerning the administration of the estate,' 'orders to turn over property of the estate,' and 'proceedings to determine, avoid, or recover preferences.'" Id. (quoting 28 U.S.C. § 157(b)(2)). Bankruptcy courts also have jurisdiction over cases that are "related to" a bankruptcy case. Id. "A bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy." In re Wilshire Courtyard, 729 F.3d 1279, 1287 (9th Cir. 2013) (quoting Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 868 (9th Cir. 2005)) (quotations omitted). Ordinarily, the applicable test for "related to" jurisdiction is

---

> withdrawn by filing a motion with the clerk of the bankruptcy court, who will promptly transmit the motion to the clerk of the district court.

Local Rule 1070.1(a).

whether

> *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

In re Pegasus, 394 F.3d at 1193 (citations omitted). However, in the post-confirmation context, the "essential inquiry is whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." Id. at 1194 (quoting In re Resorts Int'l, Inc., 372 F.3d 154, 166-67 (3d Cir. 2004)) (quotations omitted). "[M]atters affecting 'the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" Id. (quoting In re Resorts, 372 F.3d at 167) (quotations omitted). This test "recognizes the limited nature of post-

7

confirmation jurisdiction but retains a certain flexibility." In re Wilshire, 729 F.3d at 1287 (quoting In re Pegasus, 394 F.3d at 1194) (quotations omitted). It "requires particularized consideration of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions . . . [and] can only be properly applied by looking at the whole picture." Id. at 1289.

Giving particularized consideration to the facts and posture of this case, and after assessing the whole picture, the Court finds that this matter should be referred to the bankruptcy court for pretrial matters because this action is related to In re 1250 Oceanside; that is, there is a close nexus between this action and In re 1250 Oceanside.

It is Plaintiffs' position that this proceeding is not related to the bankruptcy proceeding because it lacks the close nexus required by the Ninth Circuit. Specifically, Plaintiffs argue that this action involves state law claims that do not require

interpretations of the Confirmation Plan or Order, and the claims cannot affect the implementation and execution of the Confirmation Plan.  Plaintiffs rely on In re Valdez Fisheries Dev. Ass'n, Inc., 439 F.3d 545 (9th Cir. 2006) to support their argument that this action lacks a close nexus to In re 1250 Oceanside.  In In re Valdez, a bankruptcy court, finding that it had "related to" jurisdiction, reopened a chapter 11 case to determine the scope of a settlement agreement entered into between a creditor and a former debtor. Id. at 547.  The settlement agreement provided, in pertinent part, that the two parties would dismiss all pending litigation between them, and that the bankruptcy court would have continued jurisdiction over the interpretation of the settlement agreement.  Id. During the chapter 11 proceedings, the bankruptcy court approved the settlement agreement and dismissed the chapter 11 proceeding.  Id.  The district court affirmed the bankruptcy court's decision to reopen the proceedings, "but on the ground that by approving the settlement agreement, the bankruptcy court retained

9

jurisdiction to interpret it." Id. at 548.

The Ninth Circuit reversed, reasoning that the proceeding did not fall within the rationale of the close nexus test because 1) there was no confirmed plan; 2) the dispute would have no effect on the bankruptcy estate; and 3) a bankruptcy court's involvement in a dispute over the terms of a settlement agreement which has been fully implemented would be fortuitous. Id.

In re Valdez is distinguishable. Most significantly, no plan was ever confirmed in that case. By contrast, there is a Consolidated Plan and a Confirmation Order in this case. The Confirmation Order expressly incorporated the Term Sheet into the Consolidated Plan. Mot., Ex. E at ¶ 26 ("The Batiste/Davis/Sun Kona Finance I, LLC Binding Settlement Term Sheet, a copy of which is attached hereto as Exhibit B is approved and shall be binding on the parties thereto, and is incorporated into the Plan."). Moreover, the Confirmation Order expressly confirmed the Consolidated Plan and incorporated it by reference.

10

Id., Ex. E at ¶ 1.  Notwithstanding Plaintiffs' attempt to trivialize the existence of the Consolidated Plan and Confirmation Order, it is a critical distinction.

As earlier noted, the applicable test is whether the present dispute affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan.  In re Wilshire, 729 F.3d at 1289 ("We reaffirm that a close nexus exists between a post-confirmation matter and a closed bankruptcy proceeding sufficient to support jurisdiction when the matter 'affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan.'").  Adjudication of the present dispute will at minimum involve the interpretation of the Term Sheet, i.e., the Consolidated Plan, and the parties' attendant conduct.  Even though the claims asserted in the Complaint are state law claims (breach of contract and fraud), the allegations all concern Defendant's purported breach of the Term Sheet, which the Confirmation Order incorporated into

11

the Consolidated Plan.[2] Moreover, the allegations pertain to Defendant's conduct prior to confirmation and/or prior to closure of the proceedings. In re Pegasus, 394 F.3d at 1194 ("[W]hile the majority of the claims asserted in the complaint are common state tort and contract claims involving post-confirmation conduct, the Appellees also allege that: the State breached the Plan and the Zortman Agreement; the State breached the covenant of good faith and fair dealing with respect to these agreements; and the State committed fraud in the inducement at the time it entered into the Plan and the Zortman Agreement. . . . Resolution of these claims will

---

[2] For this reason, the instant case is distinguishable from In re Ray, 624 F.3d 1124 (9th Cir. 2010), which concluded that "the bankruptcy court did not retain 'related to' jurisdiction [over a] breach of contract action that could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend on resolution of a substantial question of bankruptcy law." Id. at 1135. The only relationship between the breach of first refusal rights claim referred to the bankruptcy court in In re Ray and the bankruptcy proceeding was approval by the bankruptcy court of a sale order concerning real property. Id. at 1128-29, 1133-35. Additionally, the sales order was never made a part of the plan of reorganization. Id. at 1128-29.

likely require interpretation of the Zortman Agreement and the Plan.").

The fact that the Consolidated Plan's transactions have been consummated does not preclude a finding of "related to" jurisdiction. In re Wilshire, 729 F.3d at 1292 (finding that "related to" subject matter can exist despite the fact that a plan has been consummated). Had the current dispute arisen prior to confirmation, it would have likely affected the implementation and execution of the plan. As such, the bankruptcy court may "retain jurisdiction over post-confirmation, post-consummation disputes related to the interpretation and execution of the confirmed Plan as if they had arisen prior to consummation." Cf. id. at 1292-93 (extending post-confirmation jurisdiction under the "close nexus" test "to matters such as tax consequences that would have likely affected the implementation and execution of the plan if the matter had arisen contemporaneously").

For these reasons, the Court finds that "related to" jurisdiction exists because there is a

13

close nexus between this action and the In re 1250 Oceanside.[3]

B.   Ancillary Jurisdiction

Even if "related to" jurisdiction was lacking, the Court finds that ancillary jurisdiction exists. "Ancillary jurisdiction may rest on one of two bases: (1) to permit disposition by a single court of actually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." In re Ray, 624 F.3d at 1135 (quoting In re Valdez, 439 F.3d at 549) (quotations and citation omitted). Only the second is at issue here.

Ancillary jurisdiction cannot be founded "upon

---

[3] Plaintiffs argue that even if "related to" jurisdiction exists, the Court should deny the Motion to prevent the waste of judicial resources. The Court disagrees. Under the present record, judicial economy would be served by referring the matter to bankruptcy court. The bankruptcy court would be in the best position to address matters regarding Defendants' actions that purportedly occurred during the pendency of the bankruptcy proceedings. That state law claims are asserted is immaterial. Evaluation of those claims mandates an inquiry into the parties' conduct, all of which occurred before the bankruptcy court.

a relationship so tenuous as the breach of an agreement that produced the dismissal of an earlier federal suit." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379 (1994).  However, "[w]here a settlement agreement led to the dismissal of a case, a court has jurisdiction to vindicate its authority or effectuate its decree if the court's dismissal order explicitly retained jurisdiction or incorporated the terms of the settlement agreement."  In re Valdez, 439 F.3d at 549 (citing Kokkonen, 511 U.S. at 381).  This is because, in such a case, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."  Kokkonen, 511 U.S. at 381.  A Judge's mere awareness and approval of the terms of a settlement agreement are insufficient to make them part of an order.  Id.

The Supreme Court has determined that a bankruptcy court has "jurisdiction to interpret and enforce its own prior orders."  Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009).  Travelers Indemnity Co. v. Bailey involved the review of a 2004 bankruptcy

court clarifying order which concluded that claims brought by certain parties were enjoined by orders the court had entered in 1986.  Id. at 145.  The Second Circuit acknowledged that the bankruptcy court "had continuing jurisdiction to interpret and enforce its own 1986 orders" as well as "jurisdiction to clarify its prior orders."  Id. at 146 (citation and quotations omitted).  It nevertheless held that the bankruptcy court could not "enjoin claims over which it had no jurisdiction" and that "[t]he ancillary jurisdiction courts possess to enforce their own orders is itself limited by the jurisdictional limits of the order sought to be enforced."  Id. (citation and quotations omitted) (alteration in original).  The Supreme Court upheld the bankruptcy court's jurisdiction to enter the clarifying order for two reasons:  "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders . . . [and] when the Bankruptcy Court issued the 1986 Orders it explicitly retained jurisdiction to enforce its injunctions."  Id. at 151.

        Under this framework, ancillary jurisdiction

exists.  The bankruptcy court retained jurisdiction to 1) resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Consolidated Plan, or the Confirmation Order; 2) enforce all orders and rulings issued or entered in connection with the Chapter 11 Case, or the Consolidated Plan; 3) determine any other matters that may arise in connection with or relate to the Consolidated Plan, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Consolidated Plan or the Confirmation Order; and 4) determine any other matter not inconsistent with the Bankruptcy Code.  Mot., Ex. B. at 66-70.  Insofar as the Term Sheet was incorporated into the Consolidated Plan, and the Consolidated Plan was confirmed by and incorporated into the Confirmation Order, the bankruptcy court still has jurisdiction over disputes concerning the same.  The Term Sheet was critical to the resolution of the bankruptcy proceedings and the approval of the Consolidated Plan.  In re Wilshire, 729 F.3d at 1290

("The bankruptcy court in *Travelers* had ancillary jurisdiction to enter the Clarifying Order interpreting the original plan and incorporated injunction precisely because the injunction was critical to the plan's approval.  The BAP identified in its analysis that which we find exactly relevant to the present appeal: 'the record clearly indicates that the essential parties (the debtor and the insurance companies) would not have agreed to plan confirmation without the settlement agreement and injunction. . . . The Clarifying Order related to an injunction that had been negotiated and considered an *essential part* of the plan of reorganization.'" (citation omitted) (emphasis in original)).[4]  Therefore, it would be proper to refer

---

[4] This case is distinguishable from In re Valdez, In re Ray, and Kokkonen, where the respective courts found that no ancillary jurisdiction existed.  In In re Valdez, neither the order approving the settlement agreement nor the order dismissing the case retained jurisdiction over the settlement agreement or incorporated the parties' obligation to comply with the settlement.  In re Valdez 439 F.3d at 549.  In re Ray involved "a breach of contract claim predicated on evidence that came to light after a bankruptcy case had closed, its creditors [had been] paid, and the debtor [was] discharged."  In re Ray, 624 F.3d at 1136.  The

this matter to the bankruptcy court.

      ced Based on the foregoing, the Court finds that because a "close nexus" exists between this action and the former bankruptcy proceedings, the bankruptcy court has "related to" jurisdiction.  Furthermore, the bankruptcy court has ancillary jurisdiction over this dispute because of the retention of jurisdiction provision in the Consolidated Plan, which was incorporated into the Confirmation Order.

## CONCLUSION

       In accordance with the foregoing the Court

---

relevant facts here occurred before the bankruptcy court prior to the closure of the proceedings. Finally, Kokkonen involved a post-dismissal motion to enforce a settlement agreement. Kokkonen, 511 U.S. at 377.  The underlying case had been dismissed pursuant to a Federal Rule of Civil Procedure 41(a)(1)(ii) stipulation and order of dismissal that did not retain jurisdiction over the settlement agreement or incorporate the terms of the settlement agreement in the dismissal order.  Id. at 381 (acknowledging that "the situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal," either by a retention of jurisdiction provision or incorporation of the terms of the settlement in the order).

HEREBY FINDS AND RECOMMENDS that Defendant's Motion to Refer Case to United States Bankruptcy Court, filed October 5, 2015, be GRANTED.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, January 15, 2016.



_____
Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 15-00397 ACK-KSC; <u>BATISTE, ET AL. V. SUN KONA FINANCE I, LLC, ET AL.</u>; FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO REFER CASE TO UNITED STATES BANKRUPTCY COURT