IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| WILLIAM BATISTE AND VIRGINIA BATISTE, AS TRUSTEES OF THE WILLIAM AND VIRGINIA BATISTE REVOCABLE TRUST DATED JANUARY 23, 2001; RICHARD L. DVORAK AND TERESA D. DVORAK, AS TRUSTEES OF THE RICHARD L. DVORAK LIVING TRUST, JENNIE ANN FREIMAN, INDIVIDUALLY AND AS TRUSTEE OF THE JENNIE ANN FREIMAN PROFIT SHARING PLAN; STUART H. MENDEL, INDIVIDUALLY AND AS TRUSTEE OF THE JENNIE ANN FREIMAN PROFIT SHARING PLAN, | Civ. No. 15-00397 ACK-KSC |

Plaintiffs,

    vs.

SUN KONA FINANCE I, LLC; JOHN
AND JANE DOES 1-15; DOE
PARTNERSHIPS 1-15; DOE
CORPORATIONS 1-15; and DOE
ENTITIES 1-15,

    Defendants.

ORDER ADOPTING THE FINDINGS AND RECOMMENDATIONS TO GRANT
DEFENDANT'S MOTION TO REFER CASE TO UNITED STATES
BANKRUPTCY COURT

For the reasons set forth below, the Court ADOPTS
Magistrate Judge Kevin S.C. Chang's January 16, 2016 Findings
and Recommendations to Grant Defendant's Motion to Refer Case to
United States Bankruptcy Court (for pretrial matters), ECF No.
18.

## FACTS AND PROCEDURAL HISTORY

### I.  Bankruptcy Proceedings

Plaintiffs William Batiste and Virginia Batiste, as trustees of the William and Virginia Batiste Revocable Trust dated January 23, 2001; Richard L. Dvorak and Teresa D. Dvorak, as trustees of the Richard L. Dvorak Living Trust; Jennie Ann Freiman, individually and as trustee of the Jennie Ann Freiman Profit Sharing Plan; and Stuart H. Mendel, individually and as trustee of the Jennie Ann Freiman Profit Sharing Plan (collectively, "Plaintiffs") and Defendant Sun Kona Finance, I, LLC ("SKFI") were previously creditors in the Chapter 11 bankruptcy case, In re 1250 Oceanside Partners, Case No. 13-00353 (Bankr. D. Haw. 2014).  The bankruptcy case arose in relation to a real estate development called Hokuliʻa ("the Project") on the Island of Hawaii.  Motion to Refer Case to United States Bankruptcy Court ("Motion"), Ex. H (Bankruptcy Court's Memorandum of Decision on Request for Administrative Expense ("Administrative Expense Decision"[1])) at 2, ECF No. 5-10; Compl. ¶ 8, ECF No. 1-1.  Lyle Anderson, who originally controlled the Project, borrowed money from the Bank of Scotland to secure financing for the Project.  Motion, Ex. H at 2, ECF

_____

[1] The Administrative Expense Decision is also at In re 1250 Oceanside Partners, 519 B.R. 802 (Bankr. D. Haw. 2014).

No. 5-10.  Anderson created 1250 Oceanside Partners ("the Debtors" or "Oceanside") to act as the developer of the Project. Id.; Compl. ¶ 11, ECF No. 1-1.  Plaintiffs purchased lots at Hokuli'a.  Motion, Ex. H at 2, ECF No. 5-10; Compl. ¶ 8, ECF No. 1-1.

In 2008, the Bank of Scotland declared default and SKFI purchased over $600,000,000 in debt from the Bank of Scotland along with the bank's security interests in the Project.  Motion, Ex. H at 2-3, ECF no. 5-10; Compl. ¶ 19, ECF No. 1-1.  Plaintiffs as well as other lot purchasers filed suit against the developers in connection with the failed Project. Motion, Ex. H at 3, ECF No. 5-10; Compl. ¶ 18, ECF No. 1-1.

In 2013, the Debtors commenced Chapter 11 bankruptcy proceedings.  Motion, Ex. H at 3, ECF no. 5-10; Compl. ¶ 20, ECF No. 1-1.  SKFI was a secured creditor.  Motion, Ex. H at 3, ECF no. 5-10.  Plaintiffs were unsecured creditors as a result of the lawsuit filed against the Debtors.  Compl. ¶ 21.

The Debtors and SKFI proposed a Third Amended Joint Consolidated Plan of Reorganization ("Reorganization Plan") on November 22, 2013.  See Motion, Ex. E (Order Confirming Plan Proponents' Third Amended Joint Consolidated Plan of

Reorganization (the "Confirmation Order")) at 21, ECF No. 5-7.[2]
Under the plan, the unsecured creditors, including Plaintiffs,
would receive a pro rata distribution from a fund of $750,000 to
satisfy claims of over $33,000,000.  Id. at 63, 73; Compl. ¶¶
25-26, ECF No. 1-1.

Plaintiffs raised several objections during the
confirmation process, including contesting the amount of the
unsecured creditors' fund.  Motion, Ex. H at 4, ECF no. 5-10;
Compl. ¶¶ 26-28, ECF No. 1-1.  Plaintiffs also initiated
litigation against SKFI in relation to the Reorganization Plan.
Motion, Ex. H at 4, ECF no. 5-10; Compl. ¶¶ 29-30, ECF No. 1-1.

Less than thirty minutes prior to the hearing on the
plan confirmation, the parties settled.  Motion, Ex. H at 5, ECF
No. 5-10; Compl. ¶ 33, ECF No. 1-1.  The settlement was
memorialized in writing as the Amended Batiste/Davis/Sun Kona
Finance I, LLC Binding Settlement Term Sheet (the "Settlement
Term Sheet") and was signed by attorneys representing SKFI, the
Debtors, Plaintiffs, and the Davis Creditors.[3]  Motion, Ex. E at

---

[2] Because this exhibit is composed of the Confirmation Order
as well as other incorporated documents, which are separately
paginated, the page numbers referred to herein (for this
document only) corresponded to the page numbers indicated on the
CM/ECF filing header, i.e., pages 1-133.

[3] The Davis Creditors were another group of creditors that
agreed to withdraw their objections to the plan confirmation
(continued . . . )

128, ECF No. 5-7.  As part of the Settlement Term Sheet,
Plaintiffs agreed to withdraw their objections to the
Reorganization Plan and dismissed adversary proceedings and
claims against the Debtors, SKFI, and related individuals.  Id.
SKFI also agreed to increase the amount of the unsecured
creditors fund from $750,000 to $1,550,5000.  Id.  The
Settlement Term Sheet additionally included the following
provision, at issue in the instant case: "SKFI and the Davis
Creditors will not oppose an administrative expense claim by the
Bays firm in the amount of $250,000 for making a substantial
contribution to the case."  See id.  The "Bays firm," i.e. Bays
Lung Rose & Holma, represented Plaintiffs in the bankruptcy
proceedings and represents Plaintiffs in the instant case.

As a result of the Settlement Term Sheet, the plan was
confirmed without a contested case hearing.  Motion, Ex. H at 5,
ECF No. 5-10.  The bankruptcy court entered its Confirmation
Order on June 2, 2014, which incorporated and confirmed the
Reorganization Plan.  Motion, Ex. E at 2, ECF No. 5-7.  The
Confirmation Order approved the Settlement Term Sheet, made it
"binding on the parties," and "incorporated [it] into the
[Reorganization] Plan."  Id. at 17.  The Reorganization Plan, as

( . . . continued)
pursuant to the Settlement Term Sheet.  Motion, Ex. H at 5, ECF
No. 5-10.

confirmed by the bankruptcy court in it Confirmation Order,

provided that the bankruptcy court would retain jurisdiction as

follows:

> 11.1 Retention of Jurisdiction
>
> Notwithstanding the entry of the Confirmation
> Order or the occurrence of the Effective
> Date, the Bankruptcy Court shall retain jurisdiction
> over the Chapter 11 Cases and any of the
> proceedings related to the Chapter 11 Cases
> pursuant to section 1142 of the Bankruptcy Code
> and 28 U.S.C. § 1334 to the fullest extent
> permitted by the Bankruptcy Code and other
> applicable law, including, without limitation,
> such jurisdiction as is necessary to ensure that
> the purpose and intent of the Plan is carried
> out, provided, however, that the Bankruptcy Court
> shall not have jurisdiction with respect to Tax
> Claims that arise solely after the Effective
> Date.  Without limiting the generality of the
> foregoing, the Bankruptcy Court shall retain
> jurisdiction for the following purposes:
>
> . . . .
>
> (g) resolve any cases, controversies, suits or
> disputes that may arise in connection with the
> consummation, interpretation or enforcement of
> the Plan, or the Confirmation Order, including
> the release and injunction provisions set forth
> in and contemplated by the Plan and the
> Confirmation Order or any Person's rights arising
> under or obligations incurred in connection with
> the Plan, or the Confirmation Order;
>
> . . . .
>
> (o) enforce all orders, judgments, injunctions,
> releases, exculpations, indemnifications and
> rulings issued or entered in connection with the
> Chapter 11 Case, or the Plan;
>
> . . . .

(q) determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

(r) determine any other matter not inconsistent with the Bankruptcy Code.

Id. at 91-95.

After the bankruptcy court issued its Confirmation Order, Plaintiffs "filed a claim for reimbursement of a portion of their attorneys' fees and costs as administrative expenses." Motion, Ex. H at 5, ECF No. 5-10.  The Debtors objected to Plaintiffs' claim.  Id.  In its Administrative Expense Decision, the bankruptcy court found that Plaintiffs were "entitled to an administrative expense claim of $55,000."[4]  Id. at 16.

On June 22, 2015, the bankruptcy court issued a Final Decree, which 1) discharged the Debtors, their representatives, and their appointed professionals from further duties and responsibilities, 2) approved the Debtors' Post-Confirmation Final Reports; 3) directed that all orders and judgments continue in effect and operation; and 4) closed the case.

---

[4] In its Administrative Expense Decision, the bankruptcy court noted that "SKFI (but not the debtors)" had previously "agreed that it would not oppose a request by the Batiste creditors for reimbursement of up to $250,000 of attorneys' fees plus costs."  Id. at 5.

Plaintiffs' Memorandum in Opposition to Defendant Sun Kona
Finance I, LLC's Motion to Refer Case to United States
Bankruptcy Court ("Opposition"), Ex. A (Final Decree) at 2, ECF
No. 10-2.

## II.  District Court Proceedings

On September 1, 2015, Plaintiffs filed a Complaint and
Demand for Jury Trial in the Circuit Court of the First Circuit
of the State of Hawaii alleging that SKFI breached the
Settlement Term Sheet by opposing Plaintiffs' request for
$250,000 in attorneys' fees.  Compl. ¶¶ 49-53, ECF No. 1-1.
Plaintiffs also allege that SKFI falsely represented that it
would not oppose Plaintiffs' application for the fees "[i]n
order to induce the Plaintiff[s] to dismiss the adversary
proceedings filed in the bankruptcy case, withdraw their
objections to the SKF[I] claim against Oceanside in the
bankruptcy proceedings, and withdraw their objections to the
Reorganization Plan."  Id. at ¶¶ 55-56.[5]  In support of these
claims, Plaintiffs allege that "Oceanside - which was under the
control of SKF[I] - filed an opposition to Plaintiffs'
application to recover the attorneys' fees" and that SKFI's
attorney "submitted a declaration in opposition" to the

_____

[5]Plaintiffs' Complaint also includes a count for punitive
damages in relation to SKFI's conduct.  Compl. ¶¶ 60-63.

application for fees and "appeared at the hearing [on the application for fees] on behalf of SKF[I], and argued in opposition to the Plaintiffs' request." Id. ¶¶ 44-47.

SKFI removed the case to this district court on October 5, 2015. Notice of Removal, ECF No. 1. On October 5, 2015, SKFI also filed a Motion to Refer Case to United States Bankruptcy Court, which Plaintiffs opposed, claiming that the bankruptcy court lacks jurisdiction. Motion, ECF No. 5; Opposition, ECF No. 10. SKFI filed a Reply on November 6, 2015. ECF No. 14. Magistrate Judge Kevin Chang held a hearing on the Motion on January 12, 2016. On January 16, 2016, Magistrate Judge Chang issued Findings and Recommendations to Grant Defendant's Motion to Refer Case to United States Bankruptcy Court (the "F&R"). ECF No. 18. The F&R recommends that the case be referred to the bankruptcy court for pretrial matters based on Magistrate Judge Chang's determination that the bankruptcy court has both statutory and ancillary jurisdiction over Plaintiffs' claims. Id. at 5-19.

On January 29, 2016, Plaintiffs filed Objections to the F&R ("Obj."). ECF No. 21. On February 12, SKFI filed its Response to Obj. ("Response"). ECF No. 23.

**STANDARD OF REVIEW**

The standard of review applied to a magistrate judge's decision depends on whether the decision involves a

nondispositive or dispositive matter.  Nondispositive matters are "pretrial matter[s] not dispositive of a party's claim or defense."  Fed. R. Civ. P. 72(a).  "[A] dispositive matter involves the determination of the merits of the case or is critical in shaping the nature of the litigation."  JJCO, Inc. v. Isuzu Motors Am., Inc., No. CV 08-00419 SOM/LEK, 2009 WL 3818247, at *2 (D. Haw. Nov. 12, 2009).

Under Local Rule 74.1, any party may appeal from a magistrate judge's order determining a non-dispositive pretrial matter.  The district judge shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.  See Local Rule 74.1; see also Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Under the "clearly erroneous" standard, such a ruling must be accepted unless, after reviewing the entire record, the Court is "left with the definite and firm conviction that a mistake has been committed."  Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund Ins. Co., Civ. No. 11-00758 ACK-KSC, 2013 WL 2156469, at *2 (D. Haw. May 16, 2013) (quoting United States v. Hinkson, 585 F.3d 1247, 1260 (9th Cir. 2009)).

Where the magistrate judge's order, findings, and/or recommendations involve a dispositive matter, however, the Court must review de novo those portions to which objections are made and "may accept, reject, or modify, in whole or in part, the

10

findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); see also Local Rule 74.2; Fed. R. Civ. P. 72(b).  Under a de novo standard, the Court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered."  Freeman v. DirecTV, Inc., 457 F.3d 1001, 1004 (9th Cir. 2006).

The parties disagree as to which standard of review applies.  Plaintiffs maintain that the F&R should be reviewed de novo, while Defendant argues that because SKFI's Motion is not dispositive, the Court should employ the "clearly erroneous" standard.  Obj. at 5, ECF No. 21; Response at 2-3, ECF No. 23. In support of its claim that the Motion is nondispositive, SKFI cites to Kiep v. Turner, 80 B.R. 521, 524 (D. Haw. 1987), in which this district court determined that a motion to withdraw reference to the bankruptcy court was nondispositive because it "merely concern[ed] which court/judge [would] hear the [plaintiffs'] state court causes of action."  The court noted that "[t]he motion has no bearing on the merits of the claims, nor on the parties, nor on the applicable law."  Id.  SKFI maintains that its Motion is the "'flip side' of a motion to withdraw reference."  Response at 2, ECF no. 23.

While a motion to withdraw reference to the bankruptcy court and a motion to refer to bankruptcy court are analogous, Kiep did not appear to require that the magistrate judge make a

determination as to the bankruptcy court's ultimate jurisdiction over the matter.  80 B.R. at 524.  Kiep is also distinguishable in that the magistrate judge issued an order denying withdrawal of reference, whereas here, Magistrate Judge Chang determined that his decision should be findings and recommendations instead of an order.  See id. at 523.  Moreover, since Kiep was decided, this district court and the Ninth Circuit have determined that a motion to remand to state court, which also only determines which "court/judge" will hear an action, is a dispositive matter subject to de novo review.  See, e.g., Flam v. Flam, 788 F.3d 1043, 1047 (9th Cir. 2015); Eggs 'N Things Int'l Holdings Pte. Ltd. v. ENT Holdings LLC, No. CIV. 11-00626LEK-KSC, 2012 WL 665038, at *1 (D. Haw. Feb. 29, 2012).  Of course, a determination as to whether the claims will be heard in state court or federal court arguably "shap[es] the nature of the litigation," JJCO, Inc., No. CV 08-00419 SOM/LEK, 2009 WL 3818247, at *2, more so than a determination as to whether the claims will proceed in bankruptcy court or federal district court.

The court need not resolve the question of which standard of review is applicable here.  Whether the F&R are reviewed de novo or under the clearly erroneous standard, the Court would reach the same result as Magistrate Judge Chang, for the reasons discussed below.

12

## DISCUSSION

SKFI's Motion was brought pursuant to Local Rule 1070.1(a), which provides that "all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this district, except as provided in LR1070.1(b)."[6] Plaintiffs maintain that because the bankruptcy court does not have jurisdiction over their claims, referral would be inappropriate.  Obj. at 3, ECF No. 21.

In the F&R, Magistrate Judge Chang recommended that the case be referred to the bankruptcy court for pretrial matters,[7] because the bankruptcy court has jurisdiction over the

---

[6] Local Rule 1070.1(a) further provides that "[a] party may request that reference of a particular matter be withdrawn by filing a motion with the clerk of the bankruptcy court, who will promptly transmit the motion to the clerk of the district court."

Local Rule 1070.1(b) is inapplicable here.  It provides in relevant part that "[a]ny civil proceeding arising in or related to a case under Title 11 that is pending in the district court on the date the Title 11 case is filed shall be referred to a bankruptcy judge only upon order of the district judge before whom the proceeding is pending."

[7] The Court notes that Plaintiffs' jury demand does not preclude referral to the bankruptcy court.  See, e.g., In re Healthcentral.com, 504 F.3d 775, 788 (9th Cir. 2007) ("[A] Seventh Amendment jury trial in the district court does not mean the bankruptcy court must instantly give up jurisdiction and that the action must be transferred to the district court. Instead, we hold, the bankruptcy court may retain jurisdiction over the action for pre-trial matters."); Field v. Levin, No. ADV. 11-AD-90032, 2011 WL 3477101, at *4 (D. Haw. Aug. 8, 2011)

(continued . . . )

13

claims at issue.  Specifically, Magistrate Judge Chang found

there is a close nexus between the instant case and the

bankruptcy case, In re 1250 Oceanside.  Magistrate Judge Chang

also determined that the bankruptcy court has ancillary

jurisdiction over Plaintiffs' claims.  The Court ADOPTS

Magistrate Judge Chang's recommendation, for the reasons

discussed herein.  The bankruptcy court's "related to" and

ancillary jurisdiction over Plaintiffs' claims are addressed in

turn.

**I.   The Bankruptcy Court Has "Related To" Jurisdiction Over Plaintiffs' Claims**

Pursuant to 28 U.S.C. § 1334(b), bankruptcy courts

have jurisdiction over "all civil proceedings arising under

title 11, or arising in or related to cases under title 11."

"Proceedings 'arising in' bankruptcy cases are generally

referred to as 'core' proceedings, and essentially are

proceedings that would not exist outside of bankruptcy, such as

'matters concerning the administration of the estate,' 'orders

to turn over property of the estate,' and 'proceedings to

determine, avoid, or recover preferences.'"  In re Pegasus Gold

---

( . . . continued)
("Should a jury trial ultimately be warranted and necessary,
Defendants may again seek to withdraw the action to this court
after all pretrial matters have been resolved in the bankruptcy
court.").  Plaintiffs do not argue otherwise.

Corp., 394 F.3d 1189, 1193 (9th Cir. 2005) (quoting U.S.C.
§ 157(b)(2)).

     The bankruptcy court's "related to" jurisdiction, at
issue here, is more expansive.  As stated by the Ninth Circuit,
"[a] bankruptcy court's 'related to' jurisdiction is very broad,
including nearly every matter directly or indirectly related to
the bankruptcy."  In re Wilshire Courtyard, 729 F.3d 1279, 1287
(9th Cir. 2013) (citation omitted); see also Pegasus, 394 F.3d
at 1193 ("The bankruptcy court also has jurisdiction over a much
broader set of cases: those proceedings that are 'related to' a
bankruptcy case.").  The test for determining whether the
bankruptcy court has "related to" jurisdiction depends on
whether the bankruptcy proceedings are in the pre-confirmation
or post-confirmation stage.  For pre-confirmation cases,
jurisdiction is based on whether "the outcome of the proceeding
could conceivably have any effect on the estate being
administered in bankruptcy."  Pegasus, 394 F.3d at 1193
(emphasis omitted) (quoting In re Fietz, 852 F.2d 455, 457 (9th
Cir. 1988)).

     In Pegasus, the Ninth Circuit adopted the Third
Circuit's test for post-confirmation "related to" jurisdiction,
referred to as the "close nexus" test.  See Wilshire, 729 F.3d
at 1287.  Whether a bankruptcy court has jurisdiction in the
post-confirmation context rests on "whether there is a close

nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." Pegasus, 394 F.3d at 1194 (quoting In re Resorts Int'l, Inc., 372 F.3d 154, 166-67 (3d Cir. 2004)). "[M]atters affecting 'the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" Id. (quoting Resort's Int'l, 372 F.3d at 167).

In Wilshire, the Ninth Circuit reaffirmed the "close nexus" standard set forth in Pegasus, despite arguments that the standard had been narrowed by cases decided post-Pegasus. Wilshire, 729 F.3d at 1288-89. The court provided additional guidance regarding the test, noting that "[t]he Pegasus Gold 'close nexus' test requires particularized consideration of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions and 'retains a certain flexibility.'" Id. at 1289 (quoting Pegasus, 394 F.3d at 1194). Moreover, the court cautioned that "[s]uch a test can only be properly applied by looking at the whole picture." Id.

As recognized by another district court in the Ninth Circuit, in examining the "whole picture" to determine whether "related to" jurisdiction exists post-confirmation, the Ninth Circuit has considered various factors, but has not provided explicit guidance as to which factors should be considered nor

16

"the relative importance to ascribe to each factor." In re Consol. Meridian Funds, 511 B.R. 140, 147 (W.D. Wash. 2014). Notwithstanding, it appears clear that where the dispute at issue would involve enforcement or interpretation of a provision within a confirmed bankruptcy plan, a sufficiently close nexus exists. See In re Nobel Grp., Inc., 529 B.R. 284, 291-92 (Bankr. N.D. Cal. 2015).

Thus, in Pegasus, the court found a close nexus where the complaint included allegations that the appellants in the case had 1) breached both the bankruptcy plan and a settlement agreement approved by the bankruptcy court prior to confirmation of the plan; 2) breached "the covenant of good faith and fair dealing with respect to these agreements"; and 3) "committed fraud in the inducement at the time it entered into" the agreements. 394 F.3d at 1194. The court determined that "[r]esolution of these claims will likely require interpretation of the [settlement] Agreement and the Plan," id., contrasting the case with Resorts Int'l, in which the Third Circuit found the bankruptcy court lacked jurisdiction where the claim at issue did not require that a court "interpret or construe the Plan or the incorporated Litigation Trust Agreement," id. (quoting Resorts Int'l, 372 F.3d at 170). The court acknowledged that "the majority" of the claims in the complaint involved only "post-confirmation conduct," but did not view

these claims as barring the bankruptcy court's "related to" jurisdiction.  Id.

Similarly, in Wilshire, the Ninth Circuit determined there was a close nexus where "the ultimate merits question depend[ed] in part on the interpretation of the confirmed Plan." 729 F.3d at 1289.  Although the court acknowledged that the "Plan itself [was] ambiguous" as to a key issue raised in the relevant litigation and "ma[de] no mention of state tax consequences," also at issue, the court held that resolution of these issues would "require[] a close look at the economics of the transaction [at issue] as detailed in the Plan and Confirmation Order."  Id.  More recently, in In re Valley Health System, 584 Fed. App'x. 477, 479 (9th Cir. 2014), the Ninth Circuit cited affirmatively to Wilshire in determining that "related to" jurisdiction existed post-confirmation where resolution of the mandamus petition at issue required interpretation of the bankruptcy plan and the bankruptcy court's confirmation order.

Here, as in Pegasus, Wilshire, and Valley Health, resolution of Plaintiffs' claims requires interpretation of a provision in the bankruptcy plan, i.e. the Reorganization Plan. Plaintiffs' claims primarily rest on the interpretation of one specific provision of the Settlement Term Sheet—SKFI's alleged promise not to oppose the Bays firm's request for fees—which as

18

set forth in the bankruptcy court's Confirmation Order was

"binding on the parties," and "incorporated into the Plan."

Motion, Ex. E at 17, ECF No. 5-7.   Moreover, the allegations

raised in the Complaint involve conduct that occurred during the

bankruptcy proceedings, and the claims would not exist but for

the bankruptcy proceedings.   In this respect, the bankruptcy

court's "related to" jurisdiction is more clear than in Pegasus,

in which only certain of the claims raised involved

interpretation of the bankruptcy plan and the "majority of the

claims" implicated only "post-confirmation" conduct.   394 F.3d

at 1194.[8]   Moreover, while in Wilshire, 729 F.3d at 128, the

court found a close nexus despite the fact that the bankruptcy

plan did not specifically mention an issue raised post-

confirmation, here Plaintiffs' Complaint rests primarily on a

determination as to the meaning of a provision explicitly

---

[8]   Notably, two of the claims that led to "related to"
jurisdiction in Pegasus, i.e. breach of the settlement agreement
and the plan and fraud in the inducement in relation to the
settlement agreement and plan, 394 F.3d at 1194, are similar to
the claims raised in Plaintiffs' Complaint.   Plaintiffs'
Complaint raises two substantive counts: 1) breach of contract
based on Plaintiffs' allegation that SKFI breached the
Settlement Term Sheet by opposing their claim for $250,000 in
attorneys' fees; and 2) fraud, based on the allegation that SKFI
"induce[d]" Plaintiffs to "dismiss the adversary proceedings
filed in the bankruptcy case, withdraw their objections to the
SKF[I] claim against Oceanside in the bankruptcy proceedings,
and withdraw their objections to the Reorganization Plan" by
falsely representing that they would not oppose the request for
fees.   Compl. ¶¶ 49-59, ECF No. 1-1.

mentioned in the Reorganization Plan (via the Settlement Term
Sheet).  Under these circumstances, the Court agrees with
Magistrate Judge Chang's determination that there is a close
nexus between the bankruptcy case and the instant action.

Plaintiffs maintain that Magistrate Judge Chang's
finding of "related to" jurisdiction "is contrary to well
established Ninth Circuit law," citing two cases: In re Valdez
Fisheries Dev. Ass'n, Inc., 439 F.3d 545 (9th Cir. 2006), and In
re Ray, 624 F.3d 1124 (9th Cir. 2010).  Obj. at 6-8, ECF No. 21.
The Court agrees with Magistrate Judge Chang that these cases
are distinguishable.  See F&R at 10-11, 12 n.2, ECF No. 18.

In Valdez, the Ninth Circuit considered whether the
bankruptcy court had jurisdiction to interpret a settlement
agreement it had approved, which led to the dismissal of the
bankruptcy case.  439 F.3d at 546.  Prior to the initiation of
the bankruptcy proceedings, Sea Hawk Seafoods, Inc. ("Sea
Hawk"), the owners of a seafood processing plant in Alaska,
filed a lawsuit against Valdez Fisheries Development Association
("VFDA") for breach of contract in relation to the sale of the
processing plant.  Id.  Sea Hawk prevailed in state court with a
judgment "against VFDA for over $2 million."  Id.  The State of
Alaska, through the "Alaska Division of Investments then called
VFDA's loans aggregating in excess of $7 million."  Id.  VFDA

proceeded to provide the State with $1.65 million and a separate
amount for "accounts receivable."  Id.

Sea Hawk then raised claims against the State in state
court alleging that the transaction between VFDA and the State
were void under state fraudulent conveyance law.  Id.  The state
action was not resolved, and VFDA later filed for Chapter 11
bankruptcy protection.  Id.  Eventually, Sea Hawk and VFDA
reached a settlement which dismissed the "pending litigation
between" Sea Hawk and VFDA and allowed for "continued
jurisdiction over . . . the interpretation . . . of th[e]
Settlement Agreement."  Id. at 547 (alterations in original).
Notably, the State was not a party to the settlement agreement.
Id.  The bankruptcy court approved the settlement agreement and
dismissed the bankruptcy case.  Id.  Following dismissal of the
bankruptcy proceedings, Sea Hawk sought resolution in state
court of its fraudulent conveyance claim against the State.  Id.
The State maintained that the settlement agreement in the
bankruptcy court "protected it as well as VFDA."  Id.  The Ninth
Circuit determined that there was no close nexus between the
fraudulent conveyance claim and the bankruptcy case because
there was no confirmed bankruptcy plan, the dispute between Sea
Hawk and the State would have no effect on the bankruptcy
estate, and the bankruptcy court was only "fortuitously"
involved based on the "settlement agreement approved by the

21

court as a precondition of the dismissal of VFDA's bankruptcy." Id. at 548.

Despite Plaintiffs' arguments to the contrary, the circumstances that led to the court's conclusion in Valdez are markedly distinct from the instant case.  First, as determined in the F&R and argued by SKFI, because the settlement agreement in Valdez led to the dismissal of the bankruptcy proceeding, there was no confirmed bankruptcy plan in Valdez.  See F&R at 10, ECF No. 18; Response at 9, ECF No. 23.  Thus, interpretation of the settlement agreement in Valdez did not require an interpretation of a bankruptcy plan, as no confirmed plan existed.  Here, the Settlement Term Sheet was explicitly incorporated into the Reorganization Plan, as provided in the Confirmation Order.  As a result, interpretation of the Settlement Term Sheet—which is at the center of Plaintiffs' claims—necessarily involves interpretation of the Reorganization Plan.

Second, as previously noted, the claims raised by Plaintiffs here involve conduct that arose during the bankruptcy proceedings.  In contrast, in Valdez, the allegations that led to the fraudulent conveyance claim arose prior to the VFDA's filing for Chapter 11 protection, resulting in a more attenuated relationship between the claim and the bankruptcy proceedings. See Valdez, 439 F.3d at 546.

Third, in Valdez, Sea Hawk's fraudulent conveyance claim was brought against the State, which was not a party to the settlement agreement that disposed of the bankruptcy case. Id. at 547. Here, Plaintiffs' claims are against SKFI, a party to the Settlement Term Sheet.

Ray is similarly distinguishable. In Ray, the Ninth Circuit considered whether a bankruptcy court had jurisdiction over a state breach of contract claim amounting to a collateral attack on a sale order previously approved by the bankruptcy court. 624 F.3d at 1127. The debtor and another individual co-owned a shopping center referred to as Battle Ground Plaza Shopping Mall. Id. In December 2000, the debtor and the co-owner of the property entered into an agreement to sell the mall to Battle Ground Plaza LLC ("BG Plaza"). Id. The agreement allowed BG Plaza "a right of first refusal for an undeveloped, one-half acre adjoining parcel," which the debtor and his co-owner also owned. Id.

The debtor initiated bankruptcy proceedings and on March 7, 2002, the bankruptcy plan was confirmed. Id. at 1128. The plan referenced the sale agreement between the debtor and BG Plaza "but noted the sale had yet to close due to discovery of 'adverse environmental conditions.'" Id. The bankruptcy plan additionally "expressed the Debtor's intention to sell his interest in the 1/2-Acre Parcel, either to BG Plaza pursuant to

23

its first refusal rights, to his [co-owner], or to another party altogether." Id.

Following confirmation of the bankruptcy plan, issues arose regarding the sale of the 1/2 Acre Parcel. Id. Eventually, BG Plaza attempted to exercise its first refusal rights to purchase the parcel. Id. The debtor requested that the bankruptcy court approve the sale of the parcel to a third party. Id. The bankruptcy court approved the sale and issued a sale order, determining that BG Plaza's rights of first refusal had not been violated given the circumstances of the sale. Id. at 1128-29. BG Plaza later initiated a state court lawsuit alleging, inter alia, that its first refusal rights had been breached. Id. at 1129.

The court determined that "the bankruptcy court did not retain 'related to' jurisdiction for this breach of contract action that could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law." Id. at 1135. As the F&R points out, however, "[t]he only relationship between the breach of first refusal rights claim . . . in In re Ray and the bankruptcy proceeding was approval by the bankruptcy court of a sale order concerning real property." F&R at 12, n.2, ECF No. 18. Moreover, "the sales order was never made a part of the plan of reorganization." Id. Here, the claims

24

raised by Plaintiffs bear a much closer nexus to the bankruptcy proceedings, as the breach of contract claim rests on an interpretation of a specific provision of the Settlement Term Sheet, which was incorporated in to the Reorganization Plan.  In addition, whereas in Ray, the breach of contract claim "could have existed entirely apart from the bankruptcy proceeding," 624 F.3d at 1135; here, the breach of contract and fraud claims involve only conduct that occurred during the bankruptcy proceedings.

Plaintiffs claim that contrary to the F&R, "the sale at issue [in Ray] was an integral part of and expressly contemplated by the confirmed reorganization plan."  Obj. at 8, ECF No. 21.  Plaintiffs cite to the statement in Ray that the plan "expressed the Debtor's intention to sell his interest in the 1/2-Acre Parcel, either to BG Plaza pursuant to its first refusal rights, to his [co-owner], or to another party altogether."  Ray, 624 F.3d at 1128.  However, the fact that the plan mentioned the issue of the sale of the property and BG Plaza's first refusal rights does not support Plaintiffs' claim that the sale was "integral" to the plan.  To the contrary, at the time of the confirmation plan, the sale had not yet closed, and accordingly, could not have played a pivotal role in the plan's confirmation.  See id.  Moreover, the fact that the sale

25

was "contemplated" in the plan does not take away from fact that the sale order was not addressed or incorporated into the plan.

Plaintiffs additionally contend that the F&R incorrectly considered that "adjudication" of the instant case may involve "the parties' attendant conduct," claiming that "'[a]ttendant' conduct is not an element Ninth Circuit case law considers in determining whether a 'close nexus exists.'" Obj. at 8, ECF No. 21 (quoting F&R at 11, ECF No. 18). However, contrary to Plaintiffs' assertion and as discussed above, the Ninth Circuit has considered party conduct insofar as evaluating the timing of the conduct at issue (either pre- or post-confirmation) to analyze whether a close nexus exists. See, e.g., Pegasus Gold, 394 F.3d at 1194 (finding a close nexus where although most of the claims at issue were based on "post-confirmation" conduct, some of the claims involved interpretation of a settlement agreement related to the bankruptcy proceedings and the bankruptcy plan, and involved conduct that allegedly occurred pre-confirmation). Moreover, as provided in Wilshire, the "'close nexus' test requires particularized consideration of the facts and posture of each case" and "can only be properly applied by looking at the whole picture." 729 F.3d at 1279. In any event, the primary basis for the F&R's conclusion that "related to" jurisdiction exists, is that resolution of Plaintiffs' claims involve "the

implementation, consummation, execution, or administration of the confirmed plan."  Id. at 1289 (quoting Pegasus, 394 F.3d at 1194).

In sum, under the circumstances here, it cannot be said that the bankruptcy court was only "fortuitously" involved in the Settlement Term Sheet and, accordingly, in the claims raised by Plaintiffs.  See Valdez, 439 F.3d at 548.  To the contrary, unlike in Valdez and Ray, the allegations raised in Plaintiffs' Complaint involve conduct that occurred exclusively during the bankruptcy proceedings.  Indeed, the claims would not exist but for the bankruptcy proceeding.  Moreover, resolution of the claims will involve interpretation of the Settlement Term Sheet, which was 1) incorporated into the Reorganization Plan; and 2) approved and made binding on the parties through the Confirmation Order.

Accordingly, the Court agrees with Magistrate Judge Chang's determination that a close nexus exists between this action and In re 1250 Oceanside.[9]

_____

[9] Before Magistrate Judge Chang, Plaintiffs also argued that even if "related to" jurisdiction exists, the case should not be referred to prevent the waste of judicial resources.  Opposition at 11-12, ECF No. 10.  Plaintiffs do not raise this issue in their Objections.  The Court notes, however, its agreement with Magistrate Judge Chang's determination that referral would serve and not impede judicial economy.  F&R at 14 n.3, ECF No. 18.

## II.  The Bankruptcy Court's Jurisdiction Is Further Supported By the Theory of Ancillary Jurisdiction

Having found that there is "related to" jurisdiction, the Court need not determine whether ancillary jurisdiction also applies in order to adopt Magistrate Judge Chang's recommendation to refer the case to the bankruptcy court. Notwithstanding, the Court finds that Magistrate Judge Chang's determination that the bankruptcy court has ancillary jurisdiction in this matter was not in error.

In the first instance, the Court rejects Plaintiffs' suggestion that they were "denied an opportunity to present argument" on the issue of ancillary jurisdiction because SKFI did not "allege ancillary jurisdiction."  Obj. at 9, ECF no. 21. As argued by SKFI, the issue of ancillary jurisdiction was raised before Magistrate Judge Chang in SKFI's Motion and its Reply.  Response at 15-16, ECF No. 23; Memorandum in Support of Motion at 13-14, ECF No. 5-1; Reply at 8, ECF No. 14.  Although ancillary jurisdiction was not the crux of SKFI's argument, Plaintiffs' contention that ancillary jurisdiction was not alleged is simply incorrect.

Turning to the merits, the F&R found that the bankruptcy court has ancillary jurisdiction over Plaintiffs' Complaint on the basis that a court can "vindicate its authority and effectuate its decrees."  F&R at 14, ECF No. 18 (quoting

28

Ray, 624 F.3d at 1135).   Indeed, as the Ninth Circuit stated in

Wilshire, ancillary jurisdiction—which is a "close cousin to

'related to' jurisdiction"—provides "that a bankruptcy court has

the power to interpret and enforce its own orders."  729 F.3d at

1289.  On this basis, the Supreme Court in Travelers Indem. Co.

v. Bailey, 550 U.S. 137, 151 (2009), held that the bankruptcy

court correctly exercised its jurisdiction by entering a

"Clarifying Order" in 2004, determining that claims brought by

certain parties were barred by an injunction contained in the

court's 1986 order confirming the bankruptcy plan.  The Supreme

Court stated that "the Bankruptcy Court plainly had jurisdiction

to interpret and enforce its own prior orders" and emphasized

that in the court's 1986 orders "it explicitly retained

jurisdiction to enforce its injunctions."  Id.

In its discussion of Travelers, the Wilshire court

additionally noted "that ancillary jurisdiction exists where

necessary to preserve a benefit the parties initially bargained

for." Wilshire, 729 F.3d at 1290.  Thus, according to the

Wilshire court,

> [t]he bankruptcy court in Travelers had ancillary
> jurisdiction to enter the Clarifying Order
> interpreting the original plan and incorporated
> injunction precisely because the injunction was
> critical to the plan's approval.  The [Bankruptcy
> Appellate Panel] identified in its analysis that
> which we find exactly relevant to the present
> appeal: "the record clearly indicates that the
> essential parties (the debtor and the insurance

29

> companies) would not have agreed to plan
> confirmation without the settlement agreement and
> injunction. . . . The Clarifying Order related to
> an injunction that had been negotiated and
> considered an <u>essential part</u> of the plan of
> reorganization."

<u>Id.</u> (quoting <u>In re Wilshire Courtyard</u>, 459 B.R. 416, 433 (B.A.P.

9th Cir. 2011)).

Pursuant to <u>Travelers</u> and <u>Wilshire</u>, the F&R correctly

concluded that ancillary jurisdiction exists.  Here, resolution

of Plaintiffs' claims will require interpretation and/or

enforcement of the Settlement Term Sheet, which was approved by

the bankruptcy court in its Confirmation Order; made "binding on

the parties"; and incorporated into the Reorganization Plan.

Motion, Ex. E at 17, ECF No. 5-7.  Moreover, as in <u>Traveler's</u>,

(and as noted in the F&R), the bankruptcy court "explicitly

retained jurisdiction," 550 U.S. at 151, to "resolve any cases,

controversies, suits or disputes that may arise in connection

with the consummation, interpretation or enforcement of the

Plan"; "enforce all orders . . . and rulings issued or entered

in connection with the Chapter 11 Case, or the Plan"; "determine

any other matters that may arise in connection with or relate to

the Plan . . . the Confirmation Order, or any contract,

instrument, release, indenture or other agreement or document

created in connection with the Plan . . . or the Confirmation

Order"; and "determine any matter not inconsistent with the

30

Bankruptcy Code."[10]   Motion, Ex. E at 95, ECF No. 5-7.   Finally, as per the discussion in <u>Wilshire</u> quoted above, the Settlement Term Sheet here was "bargained for" by essential parties during the bankruptcy proceeding, and by Plaintiffs' own admission, the provision at issue in the Settlement Term Sheet was integral in leading the parties to agree on the Reorganization Plan.   <u>See</u> Compl. ¶ 38, ECF No. 1-1 ("The Plaintiffs would not have entered into the Settlement Agreement and withdrawn their objections to the Reorganization Plan without the agreement that SKF[I] would not object to their application to recover $250,000 of the attorneys' fees they incurred in the underlying litigation.").

Plaintiffs argue that there is no ancillary jurisdiction in the instant case because <u>Valdez</u> stands for the proposition that the court's jurisdiction "to 'vindicate its authority or effectuate its decrees' is only valid over a settlement agreement when the agreement is explicitly stated in the <u>final decree</u>."   Obj. at 9, ECF No. 21.   In support of this argument, Plaintiffs cite to the determination in <u>Valdez</u> that, "[w]here a settlement agreement led to the dismissal of a case, a court has jurisdiction to vindicate its authority or effectuate its decree if the court's dismissal order explicitly

_____

[10] The retention of jurisdiction provisions were part of the Reorganization Plan, which was confirmed in the bankruptcy court's Confirmation Order and incorporated into the order.   <u>See</u> Motion, Ex. E at 3, ECF No. 5-7.

retained jurisdiction or incorporated the terms of the settlement agreement." Id. (alteration in original) (quoting Valdez, 439 F.3d at 549). Plaintiffs maintain that here, the court's Final Decree is equivalent to the "dismissal order" in Valdez, and argue that the Final Decree did not incorporate or reference the Settlement Term Sheet or retain jurisdiction over the Settlement Term Sheet. Id. Plaintiffs' claim is unavailing.

In the first instance, the Valdez quotation cited to by Plaintiffs is inapposite. In Valdez, as discussed above, the settlement led to complete dismissal of the bankruptcy case, and accordingly, there was no confirmed bankruptcy plan or a confirmation order. Here, "a settlement agreement [did not lead] to the dismissal of a case." Valdez, 439 F.3d at 549. To the contrary, the Settlement Term Sheet was a part of the confirmed Reorganization Plan, approved and made binding on the parties in the bankruptcy court's Confirmation Order. Moreover, even if the Court were to accept the premise of Plaintiffs' argument, the Final Decree in the instant case did retain jurisdiction over the Settlement Term Sheet (by way of the Confirmation Order) insofar as the Final Decree provided that

all orders and judgments would continue in effect and operation

after closing of the case.  Obj., Ex. B at 2, ECF No. 21-2.[11]

     For these reasons, the Court agrees with Magistrate

Judge Chang's determination that the bankruptcy court has

ancillary jurisdiction over the instant case.

---

[11]In the F&R, Magistrate Judge Chang also noted that Ray and Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994), in which the Ninth Circuit and the Supreme court, respectively, determined that there was no ancillary jurisdiction, are distinguishable.  F&R at 18 n. 4, ECF No. 18.  Plaintiffs do not cite to either case in support of their claim that ancillary jurisdiction is lacking.  The Court agrees, however, with the F&R's conclusion that these cases do not preclude a finding of ancillary jurisdiction here.

As noted in the F&R, in Ray, the court determined that ancillary jurisdiction was inapplicable where the "breach of contract claim [at issue was] predicated on evidence that came to light after a bankruptcy case had closed, its creditors paid, and the debtor discharged." Ray, 624 F.3d at 1136.  Here, Plaintiffs' claims are based on issues that arose during the bankruptcy proceeding and prior to the closing of the case.

Kokkonen is distinguishable, because, as noted in the F&R, it

> involved a post-dismissal motion to enforce a settlement agreement.  Kokkonen, 511 U.S. at 377. The underlying case had been dismissed pursuant to a Federal Rule of Civil Procedure 41(a)(1)(ii) stipulation and order of dismissal that did not retain jurisdiction over the settlement agreement or incorporate the terms of the settlement agreement in the dismissal order.  Id. at 381 (acknowledging that "the situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal," either by a retention of jurisdiction provision or incorporation of the terms of the settlement in the order).

F&R at 19 n. 4, ECF No. 18.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Magistrate Judge Kevin S.C. Chang's January 16, 2016 Findings and Recommendations to Grant Defendant's Motion to Refer Case to United States Bankruptcy Court.  This matter is referred to the bankruptcy court for pretrial matters.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 26, 2016.



_____

Alan C. Kay
Sr. United States District Judge

Batiste et al. v. SKFI et al., Civ. No. 15-00397 ACK-KSC, Order Adopting the Findings and Recommendations to Grant Defendant's Motion to Refer Case to United States Bankruptcy Court.