IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____

WILLIAM BATISTE AND VIRGINIA        )
BATISTE, AS TRUSTEES OF THE         )
WILLIAM AND VIRGINIA BATISTE        )
REVOCABLE TRUST DATED JANUARY 23,   )
2001; RICHARD L. DVORAK AND         )
TERESA D. DVORAK, AS TRUSTEES OF    )
THE RICHARD L. DVORAK LIVING        )
TRUST, JENNIE ANN FREIMAN,          )
INDIVIDUALLY AND AS TRUSTEE OF      )
THE JENNIE ANN FREIMAN PROFIT       )
SHARING PLAN; STUART H. MENDEL,     )
INDIVIDUALLY AND AS TRUSTEE OF      )
THE JENNIE ANN FREIMAN PROFIT       )
SHARING PLAN,                       )
                                    )
          Plaintiffs,               )
                                    )
v.                                  )  Civ. No. 15-00397 ACK-KSC
                                    )
SUN KONA FINANCE I, LLC; JOHN AND   )
JANE DOES 1-15; DOE PARTNERSHIPS    )
1-15; DOE CORPORATIONS 1-15; and    )
DOE ENTITIES 1-15,                  )
                                    )
          Defendants.               )
_____)

## ORDER ADOPTING IN PART AND MODIFYING IN PART THE PROPOSED FINDINGS AND RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

For the reasons set forth below, the Court ADOPTS in part and MODIFIES in part the Proposed Findings and Recommended Decision on Cross-Motions for Summary Judgment ("Recommended Decision"), issued by United States Bankruptcy Judge Robert J. Faris on November 2, 2016.  ECF No. 34-1.

## FACTS AND PROCEDURAL HISTORY

### I.   The Underlying Bankruptcy Proceeding

Plaintiffs William Batiste and Virginia Batiste, as trustees of the William and Virginia Batiste Revocable Trust dated January 23, 2001; Richard L. Dvorak and Teresa D. Dvorak, as trustees of the Richard L. Dvorak Living Trust; Jennie Ann Freiman, individually and as trustee of the Jennie Ann Freiman Profit Sharing Plan; and Stuart H. Mendel, individually and as trustee of the Jennie Ann Freiman Profit Sharing Plan (collectively, "Plaintiffs" or "Batiste creditors") and Defendant Sun Kona Finance I, LLC ("SKFI") were previously creditors in the Chapter 11 bankruptcy case In re 1250 Oceanside Partners, Case No. 13-00353 (Bankr. D. Haw. 2013).

The bankruptcy case arose in relation to a real estate development called Hokuliʻa ("the Project") on the Island of Hawaii.  Compl. ¶¶ 8-20, ECF No. 1-1; Recommended Decision at 2-3.  Lyle Anderson, the company that originally controlled the Project, borrowed money from the Bank of Scotland to secure financing for the Project and created 1250 Oceanside Partners (the "Debtors" or "Oceanside") to act as the developer of the Project.  Mem. of Decision on Req. for Admin. Expense ("Administrative Expense Decision") at 2, ECF No. 5-10; Compl. ¶ 11.  Plaintiffs, trustees of various trusts and profit sharing

- 2 -

plans, purchased lots at Hokuliʻa.  Administrative Expense

Decision at 2; Compl. ¶ 8.

        In 2008, the Bank of Scotland declared default and

SKFI purchased over $600,000,000 in debt from the Bank, along

with the Bank's security interests in the Project.

Administrative Expense Decision at 2-3; Compl. ¶ 19.  Plaintiffs

and other lot purchasers filed suit in the Circuit Court of the

Third Circuit of the State of Hawaii against the developers in

connection with the failed Project.  Administrative Expense

Decision at 3; Compl. ¶ 18.

        In 2013, the Debtors commenced Chapter 11 bankruptcy

proceedings.  Administrative Expense Decision at 3; Compl. ¶ 20.

SKFI was a secured creditor and Plaintiffs were unsecured

creditors as a result of the lawsuit they filed in state court

against the Debtors.  Administrative Expense Decision at 3;

Compl. ¶ 21.

        The Debtors and SKFI proposed a Third Amended Joint

Consolidated Plan of Reorganization ("Reorganization Plan") on

November 22, 2013.  See ECF No. 5-7.  Under the plan, the

unsecured creditors, including Plaintiffs, would receive a pro

rata distribution from a fund of $750,000 to satisfy claims of

approximately $33,700,000.  See Reorganization Plan at 38, 48;

Compl. ¶¶ 25-26.

Plaintiffs raised several objections during the confirmation process, which objections included contesting the amount of the unsecured creditors' fund.  Administrative Expense Decision at 4; Compl. ¶¶ 26-28.  Plaintiffs also initiated litigation against SKFI in relation to the Reorganization Plan. Administrative Expense Decision at 4; Compl. ¶¶ 29-30.

Less than thirty minutes prior to the hearing on the plan confirmation, the parties settled.  Administrative Expense Decision at 5; Compl. ¶ 33.  The settlement was memorialized in writing as the Amended Batiste/Davis/Sun Kona Finance I, LLC Binding Settlement Term Sheet (the "Settlement Term Sheet") and was signed by attorneys representing SKFI, the Debtors, Plaintiffs, and the Davis Creditors.[1]  ECF No. 36-2.  As part of the Settlement Term Sheet, Plaintiffs agreed to withdraw their objections to the Reorganization Plan and dismissed adversary proceedings and claims against the Debtors, SKFI, and related individuals.  <u>See</u> Settlement Term Sheet at 1.  SKFI also agreed to increase the amount of the unsecured creditors' fund from $750,000 to $1,550,000.  <u>Id.</u>  Additionally, the Settlement Term Sheet included the following provision, at issue in the instant case:

---

[1] The Davis Creditors were another group of creditors that agreed to withdraw their objections to the plan confirmation pursuant to the Settlement Term Sheet.  <u>See</u> Settlement Term Sheet at 1.

> SKFI and the Davis Creditors will not oppose
> an administrative expense claim by the Bays
> firm in the amount of $250,000 for making a
> substantial contribution to the case.

See id.  The "Bays firm," i.e. Bays Lung Rose & Holma,

represented Plaintiffs in the bankruptcy proceedings and

represents Plaintiffs in the instant case.

As a result of the Settlement Term Sheet, the

Reorganization Plan was confirmed without a contested case

hearing.  Administrative Expense Decision at 5.  The bankruptcy

court entered its Confirmation Order on June 2, 2014, which

order incorporated and confirmed the Reorganization Plan.  Order

Confirming Reorganization Plan ("Confirmation Order") at 2, ECF

No. 5-7.  The Confirmation Order approved the Settlement Term

Sheet, made it "binding on the parties," and "incorporated [it]

into the [Reorganization] Plan."  Id. at 16.

After the bankruptcy court issued its Confirmation

Order, Plaintiffs filed an administrative expense claim for a

portion of their attorneys' fees and costs.  Administrative

Expense Decision at 5; see Mot. for Payment of Admin. Expenses

("Administrative Expense Motion"), ECF No. 36-2.  The Debtors

objected to Plaintiffs' claim, arguing that the "Batiste[]

[creditors'] efforts during the course of the bankruptcy case

(i) were directed solely for [the Batiste creditors'] personal

benefit, to the exclusion of the other unsecured creditors, and

(ii) continued, at great expense to the estate, long after substantially all of any increased benefit to the other unsecured creditors had become available." Debtor's [sic] Opp'n to Administrative Expense Motion ("Debtors' Opposition") at 1, ECF No. 36-2. Attached to the Opposition was a declaration made by James A. Wagner, counsel for SKFI, detailing a series of settlement discussions he had with Bernard Bays, counsel for the Batiste creditors.[2] See Decl. of James A. Wagner (the "Wagner Declaration"), ECF No. 36-2. Mr. Wagner also spoke during the hearing on the Batiste creditors' administrative expense claim, reiterating in part what was outlined in his declaration. See Transcript of Hearing at 14:15-16:15, September 15, 2014, ECF No. 36-2. In its Administrative Expense Decision, issued October 2, 2014, the bankruptcy court found that Plaintiffs were entitled to an administrative expense claim of $55,000. Administrative Expense Decision at 16. Plaintiffs did not appeal the decision.

On June 22, 2015, the bankruptcy court issued a Final Decree, which 1) discharged the Debtors, their representatives, and their appointed professionals from further duties and responsibilities; 2) approved the Debtors' Post-Confirmation

---

[2] Mr. Wagner passed away on September 2, 2016, and was therefore unable to provide any testimony regarding the cross-motions for summary judgment.

Final Reports; 3) directed that all orders and judgments continue in effect and operation; and 4) closed the case.  Final Decree at 2, ECF No. 10-2.

## II.  District Court Proceedings

On September 1, 2015, Plaintiffs filed a Complaint and Demand for Jury Trial in the Circuit Court of the First Circuit of the State of Hawaii.  Count I asserts a claim for breach of contract, alleging that SKFI breached the Settlement Term Sheet by opposing Plaintiffs' request for $250,000 in attorneys' fees.  Compl. ¶¶ 49-53.  Count II asserts a fraud claim, alleging that SKFI falsely represented that it would not oppose Plaintiffs' application for fees "[i]n order to induce the Plaintiff[s] to dismiss the adversary proceedings filed in the bankruptcy case, withdraw their objections to the SKF[I] claim against Oceanside in the bankruptcy proceedings, and withdraw their objections to the Reorganization Plan."  Id. at ¶¶ 55-56.  Count III asserts a claim for punitive damages in relation to SKFI's conduct.  Id. ¶¶ 60-63.

In support of these claims, Plaintiffs allege that "Oceanside - which was under the control of SKF[I] - filed an opposition to Plaintiffs' application to recover the attorneys' fees" and that SKFI's attorney "submitted a declaration in opposition" to the application for fees and "appeared at the

hearing [on the application for fees] on behalf of SKF[I], and argued in opposition to the Plaintiffs' request." Id. ¶¶ 44-47.

SKFI removed the case to this district court on October 5, 2015. Notice of Removal, ECF No. 1. That same day, SKFI filed a Motion to Refer Case to United States Bankruptcy Court. ECF No. 5. Plaintiffs opposed the motion, claiming that the bankruptcy court lacked jurisdiction. ECF No. 10. Magistrate Judge Chang held a hearing on the motion on January 12, 2016, and on January 16, 2016, issued his Findings and Recommendation to Grant Defendant's Motion to Refer Case to United States Bankruptcy Court ("F&R"). ECF No. 18. On February 26, 2016, over Plaintiffs' objections, this Court adopted the F&R, referring the case to the bankruptcy court for pretrial matters. Order Adopting the F&R, ECF No. 24.

On September 9, 2016, Plaintiffs filed a Motion for Partial Summary Judgment and Memorandum in Support of Motion ("Plaintiffs' Motion"), ECF No. 36-1, along with a Separate and Concise Statement of Facts in Support of Motion, ECF No. 36-2. Plaintiffs sought summary judgment solely as to Count I of their Complaint. Plaintiffs' Motion at 3. That same day, Defendant filed a Motion for Summary Judgment on Plaintiffs' Complaint and Memorandum in Support ("Defendant's Motion"), ECF No. 36-3, as well as a Separate and Concise Statement in Support of Motion,

ECF No. 36-4. Defendant sought summary judgment on Counts I, II, and III of Plaintiffs' Complaint. Defendant's Motion at 1.

The bankruptcy court held a hearing on the cross-motions for summary judgment on October 13, 2016, and on November 2, 2016, issued its Recommended Decision, recommending that this Court grant summary judgment in favor of Defendant on all claims. Recommended Decision at 1-2. The case was then transmitted back to the district court on November 16, 2016. Notice of Transmittal to District Court, ECF No. 34. Plaintiffs filed Objections to the Recommended Decision ("Objections") on November 16, 2016, ECF No. 35, and Defendant filed a Response to Objections ("Response") on November 30, 2016, ECF No. 37.

The Court finds that this matter is suitable for decision without a hearing, pursuant to Local Rule 7.2(d).

**STANDARD**

## I. Standard of Review

The parties agree that interpretation of the Settlement Term Sheet for purposes of the summary judgment motions constitutes a "non-core" proceeding.[3] See Recommended

---

[3] While SKFI agrees that this is a "non-core" proceeding because it arises under the bankruptcy court's "related to" jurisdiction, SKFI states that because this Court determined the bankruptcy court has ancillary jurisdiction over this matter, it may enter a final order on that basis. Response at 14-16 (citing Order Adopting the F&R at 28-33). SKFI cites to non-binding cases that distinguish ancillary jurisdiction from
(continued . . .)

"related to" jurisdiction, but cites to no authority that
suggests ancillary jurisdiction confers on the bankruptcy court
the authority to enter final judgment.  See Response at 15.

A bankruptcy court's ability to enter a final judgment
rests largely on whether it is defined as a "core" or "non-core"
proceeding, a determination that is made by the bankruptcy judge
pursuant to 28 U.S.C. § 157(b)(3).  See Exec. Benefits Ins.
Agency v. Arkison, 134 S.Ct. 2165, 2171-72 (2014).  Referencing
this distinction, the Supreme Court recently clarified the
bankruptcy court's authority to enter a final judgment as
follows:

> If a matter is core, the statute empowers
> the bankruptcy judge to enter final judgment
> on the claim, subject to appellate review by
> the district court.  If a matter is non-
> core, and the parties have not consented to
> final adjudication by the bankruptcy court,
> the bankruptcy judge must propose findings
> of fact and conclusions of law.  Then, the
> district court must review the proceeding de
> novo and enter final judgment.

Id. at 2172.  The Court then went on to note that in an earlier
opinion, Stern v. Marshall, 564 U.S. 462 (2011), it had
"confronted an underlying conflict between [28 U.S.C. § 157] and
the requirements of Article III."  Id.  The Court explained that
"Stern made clear that some claims labeled by Congress as 'core'
may not be adjudicated by a bankruptcy court in the manner
designated by § 157(b)."  Id.

The bankruptcy court seemed to briefly consider revisiting
the question whether this case involves a "core" or "non-core"
proceeding, stating that "[t]here is good reason to think that,
if a bankruptcy court approves a settlement agreement and enters
an order in a core proceeding, a subsequent proceeding to
interpret or enforce the agreement and order is also a core
proceeding."  Recommended Decision at 8-9.  However, noting that
the Supreme Court's case law on this point is ambiguous, the
court found it more prudent to issue proposed findings and a
recommended judgment, rather than to enter final judgment.  Id.
at 9.

In a final attempt to convince this Court to afford
deference to the bankruptcy court's Recommended Decision,
Defendant argues that "even if the Bankruptcy Court does not
have the power to enter a final judgment, SKFI submits the
Bankruptcy Court's construction of the [Settlement] Term
Sheet . . . should not be ignored given the Bankruptcy Court's
(continued . . .)

Decision at 7; Transcript of Hearing, October 13, 2016 at 18:23-19:2, ECF No. 36-17; see also Objections at 10.  The bankruptcy court may enter final judgment in a "non-core" proceeding only if all of the parties consent.  28 U.S.C. § 157(c)(2).  While SKFI has consented to the bankruptcy court's entry of a final order, Plaintiffs have not. Recommended Decision at 7 n.30.

Absent consent, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1); In re Moran, Civ. No. 12-00191 LEK-KSC, 2012 WL 3201901, at *6 (D. Haw. July 31, 2012).  "The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions."  Fed. R. Bankr. P. 9033(d).

---

ancillary jurisdiction to interpret its own decree.  In fact, the Bankruptcy Court's construction of the Term Sheet should be given, at a minimum, the same force and effect or entitled to the same deference as [a] 'clarifying order. . . .'"  Response at 16.  However, Defendant has failed to put forth any binding authority that this Court should give special weight to the bankruptcy court's findings and recommendation, and accordingly this Court will review de novo those matters to which the parties have timely and specifically objected.

## II.   Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal. at Berkeley, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87 (1986) (citation and internal

quotation marks omitted); <u>see also</u> <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (citing <u>Anderson</u>, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. <u>Matsushita Elec.</u> <u>Indus. Co.</u>, 475 U.S. at 587; <u>see also</u> <u>Posey v. Lake Pend Oreille</u> <u>Sch. Dist. No. 84</u>, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor").

## DISCUSSION

### I.  Breach of Contract

To prevail on a breach of contract claim under Hawaii law, Plaintiffs must establish "(1) the contract at issue; (2) the parties to the contract; (3) whether the plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by the defendant; (5) when and how the defendant allegedly breached the contract; and (6) how the

- 13 -

plaintiff was injured." <u>Barber v. Ohana Military Cmtys., LLC</u>, Civ. No. 14-00217 HG-KSC, 2014 WL 3529766, at *4 (D. Haw. July 15, 2014) (citing <u>Evergreen Eng'g, Inc. v. Green Energy Team LLC</u>, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012)). Both parties agree that the Settlement Term Sheet constituted a valid contract. Objections at 15; <u>see</u> Response at 2. However, the parties dispute whether Defendant breached the Settlement Term Sheet when its attorney submitted a declaration with the Debtors' Opposition to Plaintiffs' administrative expense claim and later spoke at the hearing regarding the claim and how the alleged breach injured Plaintiffs. The contractual provision at issue states as follows:

> SKFI and the Davis Creditors will not oppose an administrative expense claim by the Bays firm in the amount of $250,000 for making a substantial contribution to the case.

Settlement Term Sheet at 1.

### a.   Plaintiffs' Position

Plaintiffs' principal concern is that Defendant violated the Settlement Term Sheet when its counsel made statements in a declaration that he provided to the Debtor and stated at the Plaintiffs' administrative expense claim hearing that he had made a settlement offer to Plaintiffs on November

- 14 -

11, 2013 in the amount of $1,500,000,[4] and that Plaintiffs had

not made a substantial contribution to the bankruptcy case

subsequent to that offer.[5]

One of Plaintiffs' main contentions is that while it

was the Debtors who filed the Opposition to the administrative

expense claim, it was really SKFI that was behind the effort.

Plaintiffs maintain that SKFI had earlier purchased all of the

Debtors' debt, allowing "SKFI [to] appoint[] all officers and

---

[4] While the Debtors argue that Mr. Wagner offered to increase the unsecured creditors' fund to $1,500,000 on November 11, 2013, Plaintiffs insist that no such offer was ever made.  See Reply in Supp. of Administrative Expense Motion ("Administrative Expense Reply") at 6, In re 1250 Oceanside Partners, Case No. 13-00353 (Bankr. D. Haw. Sept. 10, 2014), ECF No. 1192. However, in an April 2014 email sent from Mr. Bays to Mr. Wagner, Mr. Bays refers to "doubl[ing] the size of the fund as you had proposed earlier."  Ex. E to Wagner Declaration, ECF No. 36-6.  As noted above, the original Reorganization Plan had provided for a $750,000 fund to satisfy the claims of unsecured creditors; this email therefore seems to support Defendant's contention that an earlier offer to double the fund to $1,500,000 was indeed made.

[5] The Bankruptcy Code allows a creditor to recover attorneys' fees as an administrative expense if that creditor makes "a substantial contribution in a case under Chapter . . . 11."  11 U.S.C. § 503(b)(3)(D).  In order to recover on a § 503(b) administrative claim, a claimant must prove two things:  "First, the claimant must be a creditor of the estate.  Second, the creditor must have made a 'substantial contribution' to the bankruptcy plan."  In re Cellular 101, Inc., 377 F.3d 1092, 1096 (9th Cir. 2004).  The Ninth Circuit has stated that "the principal test of substantial contribution is 'the extent of benefit to the estate.'"  Id.  "[S]ervices which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress o[f] reorganization."  Id. at 1097 (quoting In re Consol. Bancshares, Inc., 785 F.2d 1249, 1253 (5th Cir. 1986)).

directors of the [D]ebtor, which gave SKFI the ability to orchestrate the opposition to the application." Objections at 3, 5. Plaintiffs contend that "SKFI utilized its complete control of the [D]ebtor to instruct the [D]ebtor's attorney to join SKFI's attorney in objecting to the Plaintiff's claim for the agreed upon fees." Id. at 17. In fact, Plaintiffs point out that SKFI – not the Debtors' estate - was responsible for paying the claim, which raises a question as to what interest the Debtors had in opposing the administrative expense claim, as the only party that would benefit from doing so was SKFI. Id. at 3.

Plaintiffs also assert that the Debtors' Opposition was based exclusively on the Wagner Declaration, and contend that "it was clear to everyone that SKFI was opposed to the [administrative expense claim.]" Id. at 7. Indeed, certain language in the Wagner Declaration comes across in a questionable manner, such as Mr. Wagner's statement that "Mr. Bays sought SKFI's agreement to buy his silence with a direct payoff, to the exclusion of other unsecured creditors." See Wagner Declaration ¶ 3.

Additionally, Plaintiffs argue that "SKFI's attorney was not sworn and called to testify as a witness in the matter, and made his appearance as an attorney specifically representing SKFI and for the sole purpose of opposing the award of the

- 16 -

attorneys' fees agreed to in the Settlement Agreement."
Objections at 18.  Their argument is essentially that Mr. Wagner
was representing SKFI's interests at the hearing, rather than
simply providing factual evidence in support of the Debtors'
Opposition.

Plaintiffs contend that these violations of the
Settlement Agreement injured them because the bankruptcy court
relied entirely on Mr. Wagner's declaration and arguments in
denying roughly 80% of Plaintiffs' administrative expense claim.
See id. at 7-8.

### b.    Defendant's Position

For its part, Defendant draws a sharp distinction
between SKFI and the Debtors, which it claims acted
independently of SKFI.  Transcript of Hearing at 12:7-13:20,
September 15, 2014.  Defendant argues that while SKFI may have
agreed not to oppose Plaintiffs' administrative expense claim,
"nothing in the [Settlement] Term Sheet, or the history of the
negotiations, prohibited the Debtor from filing its Opposition
to Plaintiffs' motion for administrative expense."  Response at
3.  Rather, Defendant asserts, "the parties specifically agreed
that the Debtor would be able to file an Opposition to
Plaintiffs' motion for administrative expense."  Id.  Defendant
points out that an earlier version of the Settlement Term Sheet
included language barring the Debtors from objecting; however,

- 17 -

this language was ultimately removed from the agreement upon the advice of the Debtors' counsel.  Id. at 3-4.  Additionally, counsel for the Debtors stated at the confirmation hearing in May 2014 that the Debtors had "not waived any objections [they] may have to any party's claims," and that "those claims are preserved to the estate."  Id. at 5 (referencing Transcript of Hearing at 10:9-14, May 12, 2014, ECF No. 36-2).

Defendant further argues that "subsumed within the Debtor's right to file an opposition is the right to marshal evidence in support of its opposition," and that to hold otherwise would conflict with the bankruptcy court's independent duty to evaluate whether a substantial contribution has been made.  Id. at 6, 8.  Defendant contends that the Wagner Declaration merely served as factual support for the Debtors' Opposition, and that Mr. Wagner did not make any legal arguments either in his declaration or during his appearance at the hearing on the administrative expense claim.  Id. at 11.

The emails sent between Mr. Wagner and Mr. Bays that were submitted as exhibits to the Wagner Declaration also support the notion that, to some extent, Mr. Wagner was the best source for much of the information as to whether Plaintiffs' counsel had made a substantial contribution to the bankruptcy case.  See Exs. A-G to Wagner Declaration, ECF No. 36-6. Indeed, the bankruptcy court stated in its Administrative

Expense Decision that settlement communications such as the emails Mr. Wagner provided with his declaration "are the most important evidence, and may be the only evidence, showing whether a party made a substantial contribution to the settlement of a chapter 11 case."  Administrative Expense Decision at 16.  The bankruptcy court found in its Recommended Decision that Mr. Wagner had not opposed Plaintiffs' administrative expense claim, but had simply provided evidence in "support" of the Debtors' Opposition.[6]  Recommended Decision at 10 ("SKFI did not oppose the [Administrative Expense Motion]; rather, its counsel provided an evidentiary declaration in support of the debtor's objection.").

Finally, counsel for the Debtors, Simon Klevansky, provided an affidavit stating that if Mr. Wagner had not agreed to provide evidence in support of the Debtors' Opposition, Mr. Klevansky "could have and would have subpoenaed Mr. Wagner to testify as to such factual evidence."  See Decl. of Simon Klevansky ¶ 3, ECF No. 36-13.  Defendant suggests that this cuts against the alleged impropriety of SKFI's attorney providing such evidence.  Relatedly, Defendant's counsel argued during the

---

[6] In finding it was appropriate for Mr. Wagner to submit his declaration and speak at the hearing on the administrative expense claim, the bankruptcy court also noted that "[a]ll citizens have a duty to provide relevant evidence in judicial proceedings," and that, as an attorney, Mr. Wagner "owe[d] a duty of candor to the tribunal."  Recommended Decision at 11.

hearing before the bankruptcy court on the parties' cross-motions for summary judgment that when SKFI agreed not to "oppose" Plaintiffs' administrative expense claim, it agreed only that it would not file its own opposition to the claim. Transcript of Hearing at 19:15-24, October 13, 2016.  Thus, counsel argued, because SKFI submitted a factual declaration rather than an opposition, it did not breach the Settlement Term Sheet.  Id.

### c.   Res Judicata

Upon review of the extensive administrative expense claim and summary judgment briefing submitted by the parties to both this Court and the bankruptcy court, the Court finds that this case implicates the doctrine of res judicata.[7]  "The concept of res judicata embraces two doctrines, claim preclusion and

---

[7] Defendant raised an affirmative defense on the basis of res judicata, collateral estoppel, claim preclusion, issue preclusion, and law of the case in its Answer.  ECF No. 6, ¶ 17. Defendant also contended in its Response that "Plaintiffs' counsel should be collaterally estopped and precluded from re-litigating or asserting any arguments relating to contents of Mr. Wagner's Declaration."  Response at 18.  Defendant's counsel raised this point again at the summary judgment hearing before the bankruptcy court.  Transcript of Hearing at 16:6-12, October 13, 2016 ("[W]hat [Plaintiffs are] doing in their state court case that was removed to federal court is essentially a collateral attack on the [bankruptcy court's] prior ruling on what the appropriate administrative expense claim award was for their attorneys' fees."); id. at 21:7-9 ("And that may be why we're back here, trying to defend against what is essentially a collateral attack on the [bankruptcy court's] prior administrative expense claim.").

issue preclusion (or collateral estoppel), that bar, respectively, a subsequent action or the subsequent litigation of a particular issue because of the adjudication of a prior action." Id.

Relevant here, "[a] judgment entered in an adversary proceeding in a bankruptcy case is a valid final judgment for the purposes of claim and issue preclusion." In re Eisen, 460 F. App'x 681, 681 (9th Cir. 2011). "A bankruptcy court order is final and thus appealable 'where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed.'" In re Lewis, 113 F.3d 1040, 1043 (9th Cir. 1997) (quoting In re Frontier Props., Inc., 979 F.2d 1358, 1363 (9th Cir. 1992)). A bankruptcy court order that disposes of an administrative expense claim constitutes a final, appealable order. See In re United Educ. & Software, BAP No. CC-05-1067-MaMeP, 2005 WL 6960237, at *2 n.6 (B.A.P. 9th Cir. Oct. 7, 2005) ("An order disallowing an administrative expense claim is generally a final, appealable order.") (citing In re Mouradick, 13 F.3d 326, 326-27 (9th Cir. 1994); In re Cellular 101, Inc., 539 F.3d 1150, 1153 (9th Cir. 2008) (recognizing a party's right to appeal a bankruptcy court order granting an administrative expense claim for attorneys' fees and costs).

"The preclusive effect of the prior decision of the bankruptcy court is determined under federal res judicata standards." McClain, 793 F.2d at 1033.  Under federal law, collateral estoppel, or issue preclusion, generally requires that there be "(1) the same issue; (2) actually litigated and determined; (3) by a valid and final judgment; (4) as to which the determination is essential to the judgment." In re Paine, 283 B.R. 33, 39 (B.A.P. 9th Cir. 2002).

Here, the Court finds that it is unnecessary to determine whether or not a breach occurred.  Even assuming Plaintiffs could prevail on the other elements of breach of contract, Plaintiffs cannot establish how they were injured as required by the sixth element because the parties have already litigated before the bankruptcy judge the issue of the administrative expenses due to Plaintiffs, including whether an offer to increase the unsecured creditor's fund was made.

In his October 2014 Administrative Expense Decision, the bankruptcy judge found that on November 11, 2013, SKFI offered to increase the unsecured creditors' fund from $750,000 to $1,500,000.  Administrative Expense Decision at 4.  However, the court noted, the Batiste creditors rejected this offer and the litigation continued.  Id. at 4-5.  The bankruptcy court characterized the period after November 11, 2013 to when the

court confirmed the Reorganization Plan as the "post-offer period."[8]   Id. at 10.

The Debtors argued that after the Batiste creditors rejected SKFI's offer to double the size of the unsecured creditors' fund, litigation continued for an additional five months before the parties agreed to increase the fund to $1,550,000 – a mere $50,000 increase from SKFI's initial offer. See Debtors' Opposition at 5-7.   The Debtors argued that this additional litigation was endured "at great expense to the estate" and "contributed nothing to advancing the reorganization."   Id. at 1; Debtors' Suppl. Opp'n to Administrative Expense Motion at 8, In re 1250 Oceanside Partners, Case No. 13-00353 (Bankr. D. Haw. Sept. 11, 2014), ECF No. 1198.

Plaintiffs responded by continuing to detail the substantial contribution they felt Plaintiffs' counsel had made to the case, including his crucial role in settlement discussions on behalf of the unsecured creditors. Administrative Expense Reply at 4-5.   They also asserted that

---

[8] The bankruptcy court also recognized two other relevant time periods:  the "pre-plan period," which constituted the period prior to when the first reorganization plan was filed on August 15, 2013; and the "pre-offer period," the period from the filing of the first reorganization plan until SKFI offered to increase the unsecured creditors' fund to $1,500,000.  See Administrative Expense Decision at 10.

"Mr. Wagner's claim that there was another offer outstanding since November of 2013, is not supported by the record, makes no sense given the facts of the case, and is simply untrue." Id. at 6. However, as the bankruptcy court noted in its Administrative Expense Decision, Plaintiffs "offer[ed] no evidence to rebut the declarations and exhibits offered by the debtors . . . leav[ing] [the bankruptcy judge] with nothing to counter the detailed, corroborated, and persuasive evidence offered by the debtors." Administrative Expense Decision at 16.

The bankruptcy court ultimately found the Debtors' arguments persuasive and determined that Plaintiffs' counsel did not make a substantial contribution to the case after the November 2013 offer was made and declined to grant counsel any award for that period. Id. at 14-16. For the time period prior to the November 2013 offer, however, the court determined that an administrative expense claim of $55,000 was appropriate for counsel's contribution to the case. Id. at 16. This amount constituted "roughly one-third of the total amount sought for the pre-plan period" and "roughly 95% of the fees requested for [the pre-offer] period." Id. at 13-14.

Because Plaintiffs failed to appeal the Administrative Expense Decision, which constituted a final, appealable order, Plaintiffs are collaterally estopped from relitigating the aforementioned issues in service of their breach of contract

- 24 -

claim.  To be sure, Plaintiffs allege that their injury in this
case arises from the Debtors' opposition to the $250,000
administrative expense claim Plaintiffs sought in the bankruptcy
court.  However, resolving how Plaintiffs were injured by the
opposition would require this Court or a jury to determine
whether Plaintiffs' counsel had made a substantial contribution
to the case, which would also involve the question whether the
November 2013 offer had indeed been made.[9]  The bankruptcy court
has already decided these very issues, which were essential to
its conclusion that a $55,000 administrative expense claim was
appropriate, and neither party appealed the court's order.  The
time for Plaintiffs to claim injury arising from breach of the
Settlement Agreement has thus passed, and this Court will not
disturb the bankruptcy court's final order on that issue.

    For all of the foregoing reasons, Plaintiffs are
collaterally estopped from bringing their breach of contract
claim.  While the bankruptcy court found that Defendant did not
breach the Settlement Term Sheet and recommended that the Court

---

[9] To be clear, the Court is not here addressing whether
Plaintiffs' counsel made an earlier settlement offer of
$1,500,000, nor whether Plaintiffs' counsel thereafter provided
a substantial contribution to the bankruptcy case, nor whether
the bankruptcy court erred in its decision awarding Plaintiffs'
counsel only $55,000.  These issues were adjudicated in the
Administrative Expense Decision issued in October 2014, which
order neither party appealed, and therefore Judge Faris'
findings therein are binding upon the parties under the doctrine
of res judicata.

grant summary judgment in favor of Defendant on that basis, this Court holds that it is unnecessary to resolve the question whether Defendant breached the Settlement Term Sheet because Plaintiffs are barred by res judicata from now claiming they were injured by the alleged breach.   The Court therefore MODIFIES the bankruptcy court's recommendation with respect to Plaintiffs' breach of contract claim, and GRANTS summary judgment in favor of Defendant on Count I on the ground of collateral estoppel.

## II.   Fraud

Plaintiffs next allege that, "[i]n order to induce [Plaintiffs] to dismiss the adversary proceedings filed in the bankruptcy case, withdraw their objections to the SKF[I] claim against Oceanside in the bankruptcy proceedings, and withdraw their objections to the Reorganization Plan, SKF[I] made express and implied representations to the Plaintiffs that it would not oppose Plaintiff's [administrative expense claim]."   Compl. ¶¶ 54-59.   Under Hawaii law, a plaintiff must establish by clear and convincing evidence the following elements to prove fraud: (1) that the defendant made false representations of material fact, (2) intended to induce plaintiff to act, (3) the representations were made with knowledge of, or reckless disregard for, their falsity, and (4) the plaintiff justifiably

relied upon those false representations to his detriment.  Bulgo
v. Munoz, 853 F.2d 710, 716 (9th Cir. 1988).

Plaintiffs have offered no evidence in support of
their fraud claim, either in their summary judgment briefing or
in their Objections to the Recommended Decision.  Indeed,
Plaintiffs' counsel admitted at the summary judgment hearing
before the bankruptcy court that Plaintiffs had no evidence to
support their fraud claim.  Transcript of Hearing at 24:2-3,
October 13, 2016.  Instead, Plaintiffs sought a continuance
pursuant to Rule 56(d), in order that they may be afforded an
opportunity to conduct further discovery in support of their
claim.  See Pls.' Mem. in Opp'n to Defendant's Motion at 15, ECF
No. 36-11; Decl. of Christian D. Chambers ¶¶ 6-9, ECF No. 36-12;
Objections at 21.  Concluding that Plaintiffs "have had an ample
opportunity to uncover evidence of fraud, but . . . offer none,"
the bankruptcy court recommended that the Court deny Plaintiffs'
Rule 56(d) request and grant summary judgment in favor of
Defendant on Count II.  Recommended Decision at 12-13.

To prevail on a Rule 56(d) request, a party must make
"(a) a timely application which (b) specifically identifies (c)
relevant information, (d) where there is some basis for
believing that the information sought actually exists."  Emp'rs
Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.,
353 F.3d 1125, 1129 (9th Cir. 2004) (citation omitted).  "The

burden is on the party seeking additional discovery to proffer
sufficient facts to show that the evidence sought exists, and
that it would prevent summary judgment." Id. at 1129-30
(citation omitted).  A district court may "deny[] further
discovery if the movant has failed diligently to pursue
discovery in the past, or if the movant fails to show how the
information sought would preclude summary judgment." Id. at
1130 (citation omitted).

The Declaration of Christian D. Chambers, which serves
as the Rule 56(d) affidavit, states that "discovery into the
communications between the Defendant and the Debtor must be
completed in order to determine the extent to which the
Defendant encouraged the filing of an opposition to the
Plaintiffs' request for administrative expenses"; and that
"discovery into any discussions held between Defendant and third
parties during negotiations of the Settlement Agreement must be
conducted to determine whether the Defendant had no intention of
fulfilling its contractual obligations at the time it entered in
the Settlement Agreement."  Decl. of Christian D. Chambers ¶¶ 7-
8.

The Court finds that Plaintiffs' Rule 56(d)
application is insufficient, in that it does not provide a
specific and valid "basis for believing that the information
sought actually exists."  Rather, Plaintiffs' argument that such

evidence exists is speculative at best.  Furthermore, the Court
agrees with the bankruptcy court that Plaintiffs had "ample
opportunity" to obtain evidence in support of their fraud claim,
but failed to do so.  Plaintiffs were well aware of their
obligation to file dispositive motions so as to be heard before
the bankruptcy court not later than October 14, 2016[10] – over a
year after Plaintiffs filed their Complaint in state court and
the case was removed to the district court.  See Suppl.
Scheduling Order ¶ 2, Batiste, et al. v. Sun Kona Finance I,
LLC, Case No. 16-90014 (Bankr. D. Haw. July 13, 2016), ECF No.
34.  However, Plaintiffs did not file their Rule 56(d)
application until September 29, 2016 – two weeks before the
summary judgment hearing on October 13, 2014.  The Court will
not now award Plaintiffs for their lack of diligence.

---

[10] On May 13, 2016, the bankruptcy court issued a Recommendation
to District Court to Schedule Jury Trial, in order that the
bankruptcy court could "establish meaningful deadlines for
discovery and pretrial motions."  ECF No. 28.  The court further
recommended that "reference of this matter be withdrawn from the
bankruptcy court ninety days prior to the trial date."  Id.  On
July 6, 2016, Magistrate Judge Chang issued a Rule 16 Scheduling
Order, setting a jury trial before this Court on February 14,
2017.  ECF No. 32.  Thus, in a Supplemental Scheduling Order
issued July 13, 2016, the bankruptcy court ordered that
reference of this matter to the bankruptcy court be withdrawn on
November 16, 2016, ninety days prior to trial.  The order also
required that dispositive motions "be filed so as to be heard
not later than October 14, 2016."  Suppl. Scheduling Order ¶ 2,
Batiste, et al. v. Sun Kona Finance I, LLC, Case No. 16-90014
(Bankr. D. Haw. July 13, 2016) (emphasis in original), ECF No.
34.

Moreover, as the Court found with respect to Count I, even assuming Plaintiffs could establish the first three elements of the fraud claim, they are barred by res judicata from now claiming they suffered any detriment by justifiably relying on the alleged false representations.

For the foregoing reasons, the Court ADOPTS the bankruptcy court's recommendation as MODIFIED with respect to Plaintiffs' fraud claim, and accordingly DENIES Plaintiffs' Rule 56(d) request and GRANTS summary judgment in favor of Defendant on Count II.

### III. Punitive Damages

Finally, Plaintiffs assert a claim for punitive damages, claiming that SKFI's conduct "constitutes willful, wanton and/or malicious conduct and/or reckless disregard for the rights of the Plaintiffs under law." Compl. ¶¶ 60-63. As a preliminary matter, this claim must fail because "punitive damages are derivative in nature and cannot form an independent claim." Aoyagi v. Straub Clinic & Hosp., Inc., 140 F. Supp. 3d 1043, 1062 (D. Haw. 2015) (citing Ross v. Stouffer Hotel Co. (Haw.) Ltd., Inc., 76 Haw. 454, 466 (1994) ("[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action.")). Because the Court has granted summary judgment in favor of Defendant on Counts I

and II, Plaintiffs' claim for punitive damages fails on this
basis alone.

Furthermore, even assuming Plaintiffs' punitive
damages claim did not fail as a matter of law, Plaintiffs have
produced no evidence to support such a claim.  The Hawaii
Supreme Court has stated that "the fundamental purpose
underlying an award of exemplary or punitive damages is to
punish the wrongdoer and to deter him and others from committing
similar wrongs and offenses in the future."  Masaki v. Gen.
Motors Corp., 71 Haw. 1, 16 (1989); see also Kunewa v. Joshua,
83 Haw. 65, 73 (1996) ("The purpose of a punitive damages award
in Hawai'i is not to compensate the plaintiff, but rather, to
punish the defendant for aggravated or outrageous misconduct and
to deter the defendant and others from similar conduct in the
future.") (internal quotation marks and citation omitted).  An
award of punitive damages is appropriate "only when the
defendant has acted egregiously, intentionally, and
deliberately, and with 'a character of outrage frequently
associated with a crime.'"  Kahale v. ADT Auto. Servs., Inc., 2
F. Supp. 2d 1295, 1302 (D. Haw. 1998) (quoting Masaki, 71 Haw.
at 6.

To recover punitive damages, Plaintiffs "must prove by
clear and convincing evidence that the defendant has acted
wantonly or oppressively or with such malice as implies a spirit

of mischief or criminal indifference to civil obligations, or where there has been some wilful [sic] misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." <u>Masaki</u>, 71 Haw. at 16-17. "[T]he proper measurement of the amount of punitive damages is the degree of the defendant's malice, oppression, or gross negligence that forms the basis for liability for punitive damages and the amount of money required to punish the defendant." <u>Ditto v. McCurdy</u>, 98 Haw. 123, 131 (2002).  On the facts of this case, Plaintiffs have failed to make any showing that Defendant acted "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference." <u>See</u> <u>Masaki</u>, 71 Haw. at 16-17.

     For the foregoing reasons, the Court ADOPTS the bankruptcy court's recommendation with respect to Plaintiffs' claim for punitive damages, and GRANTS summary judgment to Defendant on Count III.


<u>CONCLUSION</u>

     For the foregoing reasons, the Court ADOPTS in part and MODIFIES in part the bankruptcy court's Recommended Decision.  The Court directs the Clerk to enter judgment in favor of Defendant.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 12, 2017.



_____
Alan C. Kay
Sr. United States District Judge


<u>Batiste et al. v. Sun Kona Finance I, LLC et al.</u>, Civ. No. 15-00397 ACK-KSC, Order Adopting in Part and Modifying in Part the Proposed Findings and Recommended Decision on Cross-Motions for Summary Judgment.